Plaintiff's Name __Ivan Kilgore__
Inmate No. __V31306__
Address __CSP-Sacramento__
__PO BOX 290066__
__Represa, CA 95671__



**FILED**

DEC **7** 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

Ivan Kilgore

(Name of Plaintiff)

vs.

See following page 1(A)

(Names of all Defendants)

² 2:07-CV-02485-GEB-DAD

(Case Number)

**COMPLAINT**

Civil Rights Act, 42 U.S.C. § 1983

**1. Previous Lawsuits (list all other previous or pending lawsuits on back of this form):**

A.  Have you brought any other lawsuits while a prisoner? Yes __ No _X_

B.  If your answer to A is yes, how many? _____
Describe previous or pending lawsuits in the space below.
(If more than one, use back of paper to continue outlining all lawsuits.)

1. Parties to this previous lawsuit:

Plaintiff _____

Defendants _____

2. Court (if Federal Court, give name of District; if State Court, give name of County)

_____

3. Docket Number _____    4. Assigned Judge _____

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)

_____

6. Filing date (approx.) _____    7. Disposition date (approx.) _____

1

**THE FOLLOWING IS A LIST OF DEFENDANTS TO THIS ACTION:**

1) ASSOCIATE/ASSISTANT WARDEN RICHARD MANDEVILLE.

2) KAREN KELLY, M.D.; CHIEF MEDICAL OFFICER/HEALTH CARE MANAGER.

3) JASDEEP BAL, M.D. ; PHYSICIAN AND SURGEON.

4) JAMES R. WEDELL, M.D. ; PHYSICIAN AND SURGEON.

5) GABRIEL S. BORGES, M.D.; PHYSICIAN AND SURGEON.

6) RICK NICHOLSON; REGISTERED NURSE.

7) MARCUS WINTON; LICENSED VOCATIONAL NURSE.

8) GLORIA FORSHAY; LICENSED VOCATIONAL NURSE.

9) GREGORY HAMPTON; CORRECTIONAL OFFICER

10) NANCY DUNN; REGISTERED NURSE AND SPECIALTY OUTPATIENT MANAGEMENT OFFICER.

11) ALLAN JENNINGS; SUPERVISING REGISTERED NURSE II.

12) TROY BRIMHALL, M.D.; CHIEF MEDICAL OFFICER/HEALTH CARE MANAGER.

13) MYRA SPINKS; CORRECTIONAL OFFICER

THE ABOVE ENLISTED DEFENDANTS TO THIS ACTION CAN BE CONTACTED

AT THEIR PLACE OF EMPLOYMENT:

CALIFORNIA STATE PRISON SACRAMENTO
100 PRISON ROAD
REPRESA, CA 95671

1(A)

## II.    Exhaustion of Administrative Remedies

A.    Is there an inmate appeal or administrative remedy process available at your institution?

Yes $\underline{X}$  No___

B.    Have you filed an appeal or grievance concerning **ALL** of the facts contained in this complaint?

Yes $\underline{X}$  No___

If your answer is no, explain why not_____

_____

_____

_____

C.    Is the process completed?

Yes $\underline{X}$  ___  If your answer is yes, briefly explain what happened at each level.
See following page 2(A)

_____

_____

No___    If your answer is no, explain why not.

_____

_____

_____

**NOTICE:**    Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process available at your institution, you may not file an action under Section 1983, or any other federal law, until you have first completed (exhausted) the process available at your institution. You are required to complete (exhaust) the inmate appeal or administrative remedy process before filing suit, regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). **Even if you are seeking only money damages and the inmate appeal or administrative remedy process does not provide money, you must exhaust the process before filing suit.** Booth, 532 U.S. at 734.

## III.   Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A.    Defendant See attached "Statement of Facts."
_____ at _____

2

APPEAL # SAC-H-06-02090

               INFORMAL LEVEL-BYPASSED
               FORMAL LEVEL-BYPASSED
               FIRST FORMAL LEVEL-GRANTED(11-06-06)
               SECOND FORMAL LEVEL- PARTICALLY GRANTED(1-08-07)
               DIRECTORS LEVEL-DENIED(4-18-07)

APPEAL # SAC-H-07-00851

               INFORMAL LEVEL-BYPASSED
               FORMAL LEVEL-BYPASSED
               FIRST FORMAL LEVEL-PARTICALL GRANTED(4-16-07)
               SECOND FORMAL LEVEL-PARTICALLY GRANTED(5-25-07)
               DIRECTORS LEVEL-DENIED(9-25-07)

2(A)

B. Additional defendants _____

_____
_____
_____
_____
_____
_____
_____
_____
_____

## IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

See attached "Statement of Facts." _____

_____
_____
_____
_____
_____
_____
_____
_____

## V. Relief.

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

See attached "Claim For Relief," following the "Statement of Facts."

_____
_____
_____
_____
_____

I declare under penalty of perjury that the foregoing is true and correct.

Date_____ 12-6-07       Signature of Plaintiff _____

(revised 6/01/04)

3

## STATEMENT OF FACTS

1) THIS IS A COMPLAINT FOR DAMAGES FOR DEFENDANTS' DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS OF PLAINTIFF, IVAN KILGORE, DURING HIS CONFINEMENT BY THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION(CDCR) AT CALIFORNIA STATE PRISON SACRAMENTO(CSP-SAC.).

2) THIS ACTION ARISES UNDER 42 U.S.C. 1983

3) ALL OF THE CONDUCT GIVING RISE TO THE CLAIMS ALLEGED HEREIN AROSE IN SACRAMENTO COUNTY, CALIFORNIA. THEREFORE, VENUE IS PROPER UNDER 28 U.S.C. sections 1331, 1343

4) PLAINTIFF IS AND WAS AT ALL RELEVANT TIMES MENTIONED HEREIN A PRISONER IN THE CUSTODY, CONTROL, AND CARE OF CDCR EMPLOYEES AT VARIOUS CORRECTIONAL INSTITUTIONS, INCLUDING CSP-SAC. PLAINTIFF HAS BEEN A PRISONER AT CSP-SAC SINCE AUGUST OF 2004. AT ALL TIMES DURING HIS IMPRISONMENT, PLAINTIFF HAS RELIED ON THE MEDICAL CARE PROVIDERS AT CDCR PRISONS TO PROVIDE HIM WITH THE NECESSARY MEDICAL CARE SINCE HIS COMMITTMENT BY THE ALAMEDA COUNTY SUPERIOR COURT IN APRIL OF 2004, WHEREAS HIS COMMITTMENT CURRENTLY STANDS AT A SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE.

5) DEFENDANT ASSISTANT WARDEN RICHARD MANDEVILLE, PLAINTIFF IS INFORMED AND BELIEVES, AND AT ALL TIMES RELEVANT HEREIN WAS EMPLOYED AS ASSISTANT WARDEN OF CSP-SACRAMENTO. AS THE ASSISTANT WARDEN, DEFENDANT MANDEVILLE IS AND HAS BEEN RESPONSIBLE FOR PROMUL-GATING, SUPERVISING THE PROMULGATION OF, IMPLEMENTING, SUPERVISING THE IMPLEMENTATION OF, MONITORING COMPLIANCE WITH, SUPERVISING THE MONITOR-OF COMPLIANCE WITH, ENFORCING AND/OR SUPERVISING THE POLICIES AND PROCEDURES AFFECTING THE MEDICAL CARE OF ALL PRISONERS AT CSP-SAC. IN THIS POSITION DEFENDANT MANDEVILLE IS AND HAS BEEN RESPONSIBILE FOR ASSURING THAT ALL PRISONERS RECEIVE PROPER MEDICAL CARE, INCLUDING

(1)

PROPER DIAGNOSIS AND TREATMENT. AT ALL TIMES MENTIONED DEFENDANT MANDEVILLE WAS ACTING UNDER THE COLOR OF THE STATE LAW, IN THE COURSE AND SCOPE OF HIS EMPLOYMENT, AND IS SUED HEREIN HIS INDIVIDUAL CAPACITY.

6) **DEFENDANT** KAREN KELLY M.D. WAS DURNING PART OF THE TIME RELEVANT HEREIN EMPLOYED BY THE CDCR AS THE HEALTH CARE MANAGER(HCM) AT CSP-SAC. PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFEND-ANT KELLY HELD THE POSITION OF HCM FROM(APPROXIMATELY) FEBRUARY 1, 2006 TO FEBRUARY 9, 2007. DEFENDANT KELLY REMAINS EMPLOYED AT CSP-SAC AS THE CHIEF PSYCHOLOGIST. PLAINTIFF IS FURTHER INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT KELLY, DURNING HER TENURE AS HCM, WAS A PROPERLY TRAINED AND LICENSED MEDICAL DOCTOR WHO WAS RESPONSIBLE FOR THE MEDICAL CARE OF ALL PRISONERS AT CSP-SAC. THIS INCLUDED, BUT WAS NOT LIMITED TO, THE SUPERVISION, DIRECTION, AND/OR PROPER TRAINING OF THE MEDICAL STAFF AT CSP-SAC IN THE DELIVERY OF HEALTH CARE SERVICES AND THE MANAGEMENT OF HEALTH CARE PROGRAMS; INVOLVEMENT IN THE DETERM-INATION OF PROPER MEDICAL CARE FOR PRISONERS, INCLUDING, BUT NOT LIMIT-ED TO, HAVING AUTHORITY TO ORDER AND APPROVE MEDICAL TEST AND TREAT-MENTS TO BE DONE; HAVING AUTHORITY TO ASSURE THAT PRISONERS WHO ARE TRANSFERRED TO OTHER INSTITIONS RECEIVE CONTINUING PROPER MEDICAL CARE; HAVING AUTHORITY AND RESPONSIBILITY FOR ASSURING THE PROPER ORDERING AND STOCKING OF MEDICAL SUPPLIES AND MEDICATIONS; COMMUNICATION OF MEDICAL NEEDS TO THE CORRECTIONAL CUSTODY STAFF; AND GENERALLY, MAKING SURE THAT PROPER MEDICAL TREATMENT IS PROVIDED TO ALL PRISONERS AT CSP-SAC. PLAINTIFF IS FURTHER INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT KELLY WAS RESPONSIBLE FOR ASSURING THAT CSP-SAC MEDICAL STAFF, AND OTHER MEDICAL PROVIDERS WITH WHOM THE CDCR CONTRACTED IN PROVIDING MEDICAL CARE TO THE PRISONERS, AND THAT ALL SUCH INDIVIDUALS KNEW AND UNDERSTOOD, AND ACTED PURSUANT TO CDCR POLICY. AT ALL TIMES

(2)

MENTIONED DEFENDANT KELLY WAS ACTING UNDER COLOR OF STATE LAW, IN THE COURSE AND SCOPE OF HER EMPLOYMENT, AND IS SUED HEREIN HER INDIVIDUAL CAPACITY.

7) DEFENDANT TROY BRIMHALL M.D. WAS DURNING PART OF THE TIME RELEVANT HEREIN EMPLOYED BY THE CDCR AS THE HCM AT CSP-SAC. PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT BRIMHALL HELD THE POSITION OF HCM FROM(APPROXIMATELY) FEBRUARY 9, 2007 TO FEBRUARY 1, 2007. DEFENDANT REMAINS EMPLOYED AT CDCR AS THE HCM AT DEULEL VOCATIONAL INSTITUTION. PLAINTIFF IS FURTHER INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT BRIMHALL, DURING HIS TENURE AS HCM AT CSP-SAC, WAS A PROPERLY TRAINED AND LICENSED MEDICAL DOCTOR WHO WAS RESPONSIBLE FOR THE MEDICAL CARE OF ALL PRISONERS AT CSP-SAC. THIS INCLUDED, BUT WAS NOT LIMITED TO, THE SUPERVISION, DIREC-TION, AND/OR PROPER TRAINING OF THE MEDICAL STAFF AT CSP-SAC IN THE DELIVERY OF HEALTH CARE SERVICES AND THE MANAGEMENT OF HEALTH CARE PROGRAMS; INVOLVEMENT IN THE DETERMINATION OF PROPER MEDICAL CARE FOR PRISONERS, INCLUDING, BUT NOT LIMITED TO HAVING AUTHORITY TO ORDER AND APPROVE MEDICAL TEST AND TREATMENTS TO BE DONE; HAVING AUTHORITY TO ASSURE THAT PRISONERS WHO ARE TRANSFERRED TO OTHER INSTITIONS RECEIVE CONTINUING PROPER MEDICAL CARE; HAVIND THE RESPONSIBILITY FOR ASSURING THE PROPER ORDERING AND STOCKING OF MEDICAL SUPPLIES AND MEDICATIONS; COMMUNICATION OF MEDICAL NEEDS TO THE CORRECTIONAL CUSTODY STAFF; AND GENERALLY, MAKING SURE THAT PROPER MEDICAL TREATMENT IS PROVIDED TO ALL PRISONERS AT CSP-SAC. PLAINTIFF IS FURTHER INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT BRIMHALL WAS FOR ASSURING THAT CSP-SAC MEDICAL STAFF, AND OTHER MEDICAL PROVIDERS WITH WHOM THE CDCR CONTRACTED IN PROVIDING MEDICAL CARE TO THE PRISONERS, AND THAT ALL SUCH INDIVIDUALS KNEW AND UNDERSTOOD, AND ACTED PURSUANT TO CDCR

(3)

1 POLICY. AT ALL TIMES MENTIONED DEFENDANT BRIMHALL WAS ACTING UNDER

2 COLOR OF STATE LAW, IN THE COURSE AND SCOPE OF HIS EMPLOYMENT, AND

3 IS SUED HEREIN IN HIS INDIVIDUAL CAPACITY.

4 8) DEFENDANT JASDEEP BAL M.D. IS, AND AT ALL TIMES RELEVANT HEREIN

5 IS EMPLOYED BY CDCR AS A PHYSICIAN AND SURGEON, A CHIEF PHSYICIAN AND

6 SURGEON, AND CURRENTLY(SINCE 2-1-07) A HCM AT CSP-SAC.PLAINTIFF IS INFORMEI

7 AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT BAL IS A PROPERLY

8 TRAINED AND LICENSED MEDICAL DOCTOR WHO IS AND HAS BEEN RESPONSIBLE

9 FOR THE MEDICAL CARE OF ALL PRISONERS AT CSP-SAC. THIS INCLUDES, BUT

10 IS NOT LIMITED TO, THE SUPERVISION, DIRECTION, AND/OR PROPER TRAINING

11 OF THE MEDICAL STAFF AT CSP-SAC IN THE DELIVERY OF HEALTH CARE SERVICES

12 AND MANAGEMENT OF HEALTH CARE PROGRAMS; INVOLVEMENT IN THE DETERM-

13 INATION OF PROPER MEDICAL CARE FOR PRISONERS, INCLUDING, BUT NOT

14 LIMITED TO, HAVING AUTHORITY TO ODER AND APPROVE MEDICAL TEST AND

15 TREATMENT TO BE DONE; HAVING AUTHORITY TO ASSURE THAT PRISONERS

16 WHO ARE TRANSFERRED TO OTHER INSTITUTIONS RECEIVE RECEIVE CONTINUING

17 PROPER MEDICAL CARE; HAVING THE AUTHORITY AND RESPONSIBILITY FOR

18 ASSURING THE PROPER ORDERING ORDERING AND STOCKING OF MEDICAL SUPPLIES,

19 COMMUNICATION OF MEDICAL NEEDS TO CORRECTIONAL CUSTODY STAFF; AND,

20 GENERALLY, MAKING SURE THAT PROPER MEDICAL TREATMENT IS PROVIDED TO

21 ALL PRISONERS. PLAINTIFF IS FIRTHER INFORMED AND BELIEVES, AND THEREON

22 ALLEGES, THAT DEFENDANT BAL IS RESPONSIBLE FOR ASSURING THAT CSP-SAC

23 MEDICAL STAFF, AND ALL OTHER MEDICAL PROVIDERS WITH CDCR CONTRACTS IN

24 PROVIDING MEDICAL CARE TO PRISONERS, AND THAT ALL SUCH INDIVIDUALS

25 KNOW AND UNDERSTAND, AND ACT PURSUANT TO CDCR POICY. AT ALL TIMES

26 MENTIONED DEFENDANT BAL WAS ACTING UNDER COLOR OF THE STATE LAW,

27 IN THE COURSE AND SCOPE OF HIS EMPLOYMENT, AND IS SUED HEREIN IN

28 HIS INDIVIDUAL CAPACITY.

(4)

9) DEFENDANT ALLEN JENNINGS R.N. IS, AND AT ALL TIMES RELEVANT HEREIN WAS EMPLOYED BY THE CDCR AS A SUPERVISING REGISTERED NURSE II (SRN II) AT CSP-SAC. PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT JENNINGS IS A PROPERLY TRAINED AND LICENSED REGISTERED NURSE WHO WHO IS AND HAS BEEN RESPONSIBILE FOR THE MEDICAL CARE OF ALL PRISONERS AT CSP-SAC. THIS INCLUDES, BUT IS NOT LIMITED TO, THE SUPERVISION, DIRECTION, AND EVALUATION OF A STAFF OF REGISTERED NURSES AND PSYCHIATRIC TECHNICIANS; RECEIVE, INTERPRET AND DISSEMINATE POLICIES AND PROCEDURES SET DOWN BY THE ADMINISTRATION AT CSP-SAC AND CDCR; APPLY SUPERVISORY RULES AND PRINCIPLES; INVOLVEMENT IN THE DETERMINATION OF PROPER MEDICAL CARE FOR ALL PRISONERS INCLUDING, BUT NOT LIMITED TO, HAVING THE AUTHORITY TO ORDER AND APPROVE A FOURTEEN(14) DAY CONTINUATION OF MEDICATION IN THE EVENT AN ORDER HAS EXPIRED, AND SCHEDULING THE PRISONER DURNING THIS TIMEFRAME TO SEE A DOCTOR FOR RENEWAL OF THE MEDICATION. AT ALL TIMES MENTIONED DEFENDANT JENNINGS WAS ACTING UNDER COLOR OF STATE LAW, IN THE COURSE AND SCOPE OF HIS EMPLOYMENT, AND IS SUED IN HIS INDIVIDUAL CAPACITY.

10) DEFENDANT MYRA SPINKS IS, AND AT ALL TIMES RELEVANT HEREIN WAS EMPLOYED BY CDCR, INITIALLY AS A MEDICAL TECHNICAL ASSISTANT(MTA), THEN AND CURRENTLY AS A CORRECTIONAL OFFICER AT CSP-SAC. PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT SPINKS WAS A PROPERLY TRAINED AND LICENSED MEDICAL TECHNICAL ASSISTANT WHO WAS AT SAID TIME RESPONSIBLE FOR THE MEDICAL CARE OF ALL PRISONERS A CSP-SAC. THIS INCLUDES, BUT IS NOT LIMITED TO, THE DELIVERY OF HEALTH CARE SERVICES AND PROGRAMS TO ALL PRISONERS AT CSP-SAC; COMMUNICATING THE MEDICAL NEEDS OF ALL PRISONERS TO APPROPRIATE MEDICAL STAFF AT CSP-SAC. AT ALL TIMES MENTIONED DEFENDANT SPINKS WAS ACTING UNDER COLOR OF STATE LAW, IN THE COURSE AND SCOPE OF HER EMPLOYMENT, AND IS SUED HEREIN IN HER INDIVIDUAL CAPACITY.

(5)

11) DEFENDANT JAMES R. WEDELL M.D. IS, AND AT ALL TIMES MENTIONED HEREIN WAS EMPLOYED BY CDCR AS A PHYSICIAN AND SURGEON AT CSP-SAC. PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT WEDELL IS A PROPERLY TRAINED AND LICENSED MEDICAL DOCTOR WHO IS AND HAS BEEN RESPONSIBLE FOR THE MEDICAL CARE OF ALL PRISONERS AT CSP-SAC. THIS INCLUDES, BUT IS NOT LIMITED TO, THE SUPERVISION, DIRECTION, AND/OR PROPER TRAINGING OF THE MEDICAL STAFF AT CSP-SAC IN DELIVERY OF HEALTH CARE SERVICES AND MANAGEMENT OF HEALTH CARE PROGRAMS; INVOLVEMENT IN THE DETERMINATION OF PROPER MEDICAL CARE FOR ALL PRISONERS INCLUDING, BUT NOT LIMITED TO, HAVING AUTHORITY TO ORDER AND APPROVE MEDICAL TEST AND TREATMENTS TO BE DONE; HAVING AUTHORITY AND RESPONSIBILITY FOR ASSURING THE PROPER ORDERING AND STOCKING OF MEDICAL SUPPLIES; AND GENERALLY, MAKING SURE THAT PROPER MEDICAL TREATMENT IS PROVIDED TO ALL PRISONERS. AT ALL TIMES MENTIONED DEFENDANT WEDELL WAS ACTING UNDER COLOR OF STATE LAW, IN THE COURSE AND SCOPE OF HIS EMPLOYMENT, AND IS SUED HEREIN IN HIS INDIVIDUAL CAPACITY.

12) DEFENDANT GABRIEL S. BORGE M.D. IS, AND AT ALL TIMES MENTIONED HEREIN WAS EMPLOYED BY THE CDCR AS A PHYSICIAN AND SURGEON AT CSP-SAC. PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT BORGES IS A PROPERLY TRAINED AND LICENSED MEDICAL DOCTOR WHO IS AND HAS BEEN RESPONSIBLIE FOR THE MEDICAL CARE OF ALL PRISONERS AT CSP-SAC. THIS INCLUDES, BUT IS NOT LIMITED TO, THE SUPERISION, DIRECTION, AND/OR PROPER TRAINING OF THE MEDICAL STAFF AT CSP-SAC. IN THE DELIVERY OF HEALTH CARE SERVICES AND MANAGEMENT OF HEALTH CARE PROGRAMS; INVOLVEMENT

(6)

1 IN THE DETERMINATION OF PROPER MEDICAL CARE FOR ALL PRISONERS INCLUDING,
2 BUT NOT LIMITED TO, HAVING AUTHORITY TO ODER AND APPROVE MEDICAL TEST
3 AND TREATMENT TO BE DONE; HAVING THE AUTHORITY AND RESPONSIBILITY FOR
4 ASSURING THE PROPER ORDERING AND STOCKING OF MEDICAL SUPPLIES; COMMUNI-
5 CATION OF MEDICAL NEEDS TO THE CORRECTIONAL CUSTODY STAFF; AND
6 GENERALLY, MAKING SURE THAT PROPER MEDICAL TREATMENT IS PROVIDED TO ALL
7 PRISONERS. AT ALL TIMES MENTIONED DEFENDANT BORGES WAS ACTING UNDER
8 COLOR OF STATE LAW, IN THE COURSE AND SCOPE OF HIS EMPLOYMENT, AND IS
9 SUED HEREIN IN HIS INDIVIDUAL CAPACITY.

10 13) DEFENDANT RICK NICHOLSON R.N. IS, AND AT ALL TIMES RELEVANT
11 HEREIN WAS EMPLOYED BY THE CDCR AS A REGISTERED NURSE AT CSP-SAC.
12 PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT
13 NICHOLSON IS A PROPERLY TRAINED AND LICENSED REGISTERED NURSE WHO IS
14 AND HAS BEEN RESPONSIBLE FOR THE MEDICAL CARE OF ALL PRISONERS AT CSP-
15 SAC. AT ALL TIMES MENTIONED DEFENDANT NICHOLSON WAS ACTING UNDER COLOR
16 OF STATE LAW, IN THE COURSE AND SCOPE OF HIS EMPLOYMENT, AND IS SUED
17 IN HIS INDIVIDUAL CAPACITY.

18 14) DEFENDANT MARCUS WINTON LVN IS, AND AT ALL TIMES RELEVANT
19 HEREIN WAS EMPLOYED BY THE CDCR AS A LICENSED VOCATIONAL NURSE AT
20 CSP-SAC. PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT
21 DEFENDANT WINTON IS A PROPERLY TRAINED AND LICENSED LICENSED VOCATIONAL
22 NURSE WHO IS AND HAS BEEN RESPONSIBLE FOR THE MEDICAL CARE OF ALL
23 PRISONERS AT CSP-SAC. AT ALL TIMES MENTIONED DEFENDANT WINTON WAS
24 ACTING UNDER COLOR OF STATE LAW, IN THE COURSE AND SCOPE OF HIS
25 EMPLOYMENT, AND IS SUED IN HIS INDIVIDUAL CAPACITY.

26 15) DEFENDANT GLORIA FORSHAY LVN IS, AND AT ALL TIMES RELEVANT
27 HEREIN WAS EMPLOYED BY THE CDCR AS A LICENCENSED VOCATIONAL NURSE AT
28 CSP-SAC. PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT
DEFENDANT FORSHAY IS A PROPERLY TRAINED AND LICENSED VOCATIONAL NURSE

(7)

WHO IS AND HAS BEEN RESPONISIBLE FOR THE MEDICAL CARE OF ALL PRISONERS AT CSP-SAC. AT ALL TIMES MENTIONED DEFENDANT FORSHAY WAS ACTING UNDER COLOR OF STATE LAW, IN THE COURSE AND SCOPE OF HER EMPLOYMENT, AND IS SUED IN HER INDIVIDUAL CAPACITY.

16) DEFENDANT C/O GREGORY HAMPTON IS, AND AT ALL TIMES RELEVANT HEREIN, WAS EMPLOYED BY THE CDCR AS A CORRECTIONAL OFFICER AT CSP-SAC. PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT HAMPTON IS A PROPERLY TRAINED CORRECTIONAL OFFICER WHO IS RESPONSIBLE FOR THE SAFETY, SECURITY, AND OVERALL WELL-BEING OF ALL PRISONERS AT CSP-SAC. AT ALL TIMES MENTIONED DEFENDANT HAMPTON WAS ACTING UNDER COLOR OF STATE LAW, IN THE COURSE AND SCOPE OF HIS EMPLOYMENT, AND IS SUED IN HIS INDIVIDUAL CAPACITY.

17) DEFENDANT NANCY DUNN R.N. IS, AND AT ALL TIMES RELEVANT HEREIN WAS EMPLOYED BY THE CDCR AS A REGISTERED NURSE AT CSP-SAC. PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT DUNN IS A PROPERLY TRAINED AND LICENSED REGISTERED NURSE WHO IS AND HAS BEEN RESPONSIBLE FOR THE MEDICAL CARE OF ALL PRISONERS AT CSP-SAC. THIS INCLUDES, BUT WAS NOT LIMITED TO, ARRANGING APPOINT-MENTS WITH SPECIALITY CLINICS OUTSIDE OF CSP-SAC FOR OUT-PATIENT SERVICES AT THE UNIVERSITY OF CALIFORNIA, DAVIS OTOLARYNGOLOGY CLINIC (ENT). PLAINTIFF IS FUTHER INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANT DUNN WAS RESPONSIBLE FOR ASSURING THAT ALL SUCH ARRANGE-MENTS AND APPROVALS FOR OUT-PATIENT SERVICES WERE COMMUNICATED WITH CSP-SAC MEDICAL STAFF, CSP-SAC TRANSPORTATION CUSTODY CORRECRTIONAL OFFICERS AND ENT. AT ALL TIMES MENTIONED DEFENDANT DUNN WAS ACTING UNDER COLOR OF STATE LAW, IN THE COURSE AND SCOPE OF HER EMPLOYMENT, AND IS SUED HEREIN IN HER INDIVIDUAL CAPACITY.

(8)

1

2

3    18) DEFENDANT DESIGNATED HEREIN AS (6), INCLUSIVE, CONSIST OF

4    ANY AND ALL SUCCESSORS OR PREDECESSORS DURING THE TIMEFRAME OF THIS

5    COMPLAINT OF DEFENDANT KAREN KELLY M.D., CMO/HEALTH CARE MANAGER(HCM),

6    WHETHER IN "ACTING" CAPACITY OR OTHERWISE. AS CMO/HCM DR. KELLY

7    WAS/IS RESPONSIBLE FOR MEDICAL CARE OF ALL THE PRISONERS AT CSP-SAC.

8    THIS INCLUDES, BUT WAS NOT LIMITED TO, THE SUPERVISION, DIRECTION,

9    AND/OR PROPER TRAINING OF THE MEDICAL STAFF AT CSP-SAC IN THE DELIVERY

10   OF HEALTH CARE SERVICES AND THE MANAGEMENT OF HEALTH CARE PROGRAMS;

11   INVOLVEMENT IN THE DETERMINATION OF PROPER MEDICAL CARE FOR PRISONERS,

12   INCLUDING, BUT NOT LIMITED TO, HAVING THE AUTHORITY TO ORDER AND

13   APPROVE MEDICAL TEST AND TREATMENTS TO BE DONE; HAVING AUTHORITY TO

14   ASSURE THAT PRISONERS WHO ARE TRANSFERRED TO OTHER INSTITUTIONS

15   RECEIVE CONTINUING PROPER MEDICAL TREATMENT AND CARE; HAVING THE

16   AUTHORITY AND RESPONSIBILITY FOR ASSURING THE PROPER ORDERING AND STOCK-

17   ING OF MEDICAL SUPPLIES AND MEDICATIONS; COMMUNICATION OF MEDICAL NEEDS

18   TO THE CORRECTIONAL CUSTODY STAFF; AND GENERALLY, MAKING SURE THAT PRO-

19   PER MEDICAL CARE AND TREATMENT IS PROVIDED TO ALL PRISONERS AT CSP-SAC.

20   PLAINTIFF IS FURTHER INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT

21   DEFENDANT KELLY WAS RESPONSIBLE FOR ASSURING THAT MEDICAL STAFF AT CSP-

22   SAC, AND OTHER MEDICAL PROVIDERS WITH WHOM THE CDCR CONTRACTED IN

23   PROVIDING MEDICAL CARE TO THE PRISONERS, AND THAT ALL SUCH INDIVIDUALS

24   KNEW AND UNDERSTOOD, AND ACTED PURSUANT TO CDCR POLICY. AT ALL TIMES

25   MENTIONED DEFENDANT KELLY WAS ACTING UNDER THE COLOR OF STATE LAW, IN

26   HER INDIVIDUAL CAPACITY. THE DEFENDANTS DESIGNATED HEREIN AS **DOES(6)**,

27   INCLUSIVE, TRUE NAMES AND CAPACITIES ARE PRESENTLY UNKNOWN TO PLAINTIFF,

28   WHO THEREFORE SUES THEM BY SUCH FICTITIOUS NAMES AND WILL SEEK LEAVE

     TO AMEND THIS COMPLAINT TO ADD THEIR TRUE NAMES AND CAPACITIES WHEN

                                    (9)

1 | THEY HAVE BEEN ASCERTAINED.

2 | 19) DEFENDANTS DESIGNATED HEREIN AS **DOES(14)**, INCLUSIVE, CONSIST
3 | OF ANY AND ALL PREDECESSORS OR SUCCESSORS,DURING THE TIMEFRAME OF
4 | THIS COMPLAINT, OF DEFENDANT NANCY DUNN R.N. WHETHER IN "ACTING"
5 | CAPACITY OR OTHERWISE. AS ACTING OR OTHERWISE, **DOES(14)** ARE RESPONSIBLE
6 | FOR THE MEDICAL CARE OF ALL PRISONERS AT CSP-SAC. THIS INCLUDES, BUT
7 | WAS NOT LIMITED TO, ARRANGING APPOINTMENTS WITH SPECIALTY CLINICS
8 | OUTSIDE OF CSP-SAC FOR OUT-PATIENT SERVICES AT ENT. PLAINTIFF IS FUR-
9 | THER INFORMED AND BELIEVES, AND THEREON ALLEGES, **DOES(14)** WAS
10 | RESPONSIBLE FOR ASSURING THAT ALL SUCH ARRANGEMENTS NECESSARY FOR
11 | OUT-PATIENT SERVICES WERE COMMUNICATED WITH CSP-SAC MEDICAL STAFF,
12 | CSP-SAC TRANSPORTATION CUSTODY CORRECTIONAL OFFICERS AND ENT. AT
13 | ALL TIMES MENTIONED DEFENDANTS **DOES(14)** WAS ACTING UNDER COLOR OF
14 | STATE LAW, IN THE COURSE AND SCOPE OF THEIR EMPLOYMENT, AND IS SUED
15 | HEREIN IN THEIR INDIVIDUAL CAPACITIES. THE TRUE-NAMES AND CAPACITIES
16 | OF SAID **DOES(14)** ARE PRESENTLY UNKNOWN TO PLAINTIFF, WHO THEREFORE
17 | SUES THEM BY SUCH FICTITIOUS NAMES AND WILL SEEK LEAVE TO AMEND
18 | THIS COMPLAINT TO ADD THEIR TRUE NAMES AND CAPACITIES WHEN THEY
19 | HAVE BEEN ASCERTAINED.

20 | 20) DEFENDANTS DESIGNATED HEREIN AS (1) THROUGH (46),
21 | INCLUSIVE, CONSIST OF INDIVIDUALS WHO ARE CURRENTLY EMPLOYED BY
22 | THE CDCR AND ARE RESPONSIBLE FOR THE MEDICAL CARE OF ALL PRISONERS
23 | AT CSP-SAC. INCLUDING, BUT NOT LIMITED TO, THE SUPERVISION, DIRECT-
24 | ION, AND/OR PROPER TRAINING OF THE MEDICAL STAFF AT CSP-SAC IN THE
25 | DELIVERY OF HEALTH CARE SERVICES AND MANAGEMENT OF HEALTH CARE
26 | PROGRAMS; INVOLVEMENT IN THE DETERMINATION OF PROPER MEDICAL CARE
27 | FOR PRISONERS, INCLUDING, BUT NOT LIMITED TO, HAVING AUTHORITY TO
28 | ORDER AND APPROVE MEDICAL TEST AND TREATMENTS TO BE DONE; HAVING
AUTHORITY TO ASSURE THAT PRISONERS WHO ARE TRANSFERRED TO OTHER
INSTITUTIONS RECEIVE CONTINUING PROPER MEDICAL CARE; HAVING AUTHORITY

(10)

1 AND RESPONSIBILITY FOR ASSUMING THE PROPER ORDERING AND STOCKING OF
2 MEDICAL SUPPLIES AND MEDICATIONS; COMMUNICATION OF MEDICAL NEEDS
3 TO CORRECTIONAL CUSTODY STAFF; AND GENERALLY, MAKING SURE THAT PROPER
4 MEDICAL TREATMENT IS PROVIDED TO ALL PRISONERS. PLAINTIFF IS INFORMED
5 AND BELIEVES, AND THEREON ALLEGES, EACH OF THESE DEFENDANTS (1) THROUGH
6 (46) IS RESPONSIBLE IN SOME MANNER FOR THE INJURIES ALLEGED IN THIS
7 COMPLAINT. AT ALL TIMES MENTIONED HEREIN THESE DEFENDANTS WERE ACTING
8 UNDER COLOR OF STATE LAW, IN THE COURSE AND SCOPE OF THEIR EMPLOYMENT,
9 AND ARE SUED HEREIN THEIR INDIVIDUAL CAPACITIES.

10 21) \*\*\*\*\*NOTE TO THE COURT, THE FOLLOWING PARAGRAPHS MAKE
11 REFERENCE TO "SEE EXHIBIT: ECT.," FOR THE CONVIENCE OF THIS FILING
12 THE "EXHIBITS" HAVE NOT BEEN PROVIDED. PLAINTIFF WILL SEEK TO PROVIDE
13 THE COURT AND DEFENDANTS WITH "EXHIBITS" AT DISCOVERY.

14 22) PRIOR TO DECEMBER OF 2005, PLAINTIFF HAD BEEN PRESCRIBED
15 SINUS MEDICATION THAT WAS INEFFECTIVE. ON DECEMBER 9, 2005 PLAINTIFF
16 SUBMITTED A HEALTH CARE SERVICES REQUEST FORM, AKA "SICK CALL SLIP"
17 TO THE MEDICAL STAFF AT CSP-SAC.(SEE EXHIBIT A) DECEMBER 12, 2005
18 PLAINTIFF WAS SEEN BY A REGISTERED NURSE (RN), WHO REFERRED HIM TO
19 THE DOCTOR. SOME TWO WEEKS LATER(12-30-05), PLAINTIFF WAS FINALLY
20 SEEN BY DEFENDANT WEDELL. AT SAID TIME PLAINTIFF INFORMED THE DOCTOR
21 OF BREATHING COMPLICATIONS RELATED TO THE SINUSES AND INFORMED
22 THE DOCTOR THAT THE PREVIOUS PRESCRIBED MEDICATION WAS INEFFECTIVE.
23 THE DOCTOR      PRESCRIBED DIPHENHYDRAMINE(BENADRYL) AND FLUNISOLIDE
24 NASAL SPRAY. PLAINTIFF ATFER TRYING THESE MEDICATIONS FOR TWO WEEKS
25 TO NO AVAIL, SUBMITTED ANOTHER SICK CALL SLIP WITH REGARDS TO THE
26 SAME CONDITION. THEREAFTER, HE WAS SEEN BY THE RN WHO AGAIN REFERRED
27 HIM TO THE DOCTOR. THE REFFERRAL WAS CANCELED AND DR. WEDELL ON
JANUARY 17, 2006 REPRESCRIBED THE SAME INEFFECTIVE MEDICATIONS. ON
28

JANUARY 26, 2006 PLAINTIFF WAS SEEN BY THE RN IN REGARD TO THE CANCELED REFERRAL AND THE REPRESCRITION OF THE INEFFECTIVE MEDICATIONS. (SEE EXHIBIT B) THE RN ASSURED HIM THAT HIS COMPLAINT WOULD BE RELAYED TO THE DOCTOR. ON FEBRUARY 3, 2006 HE WAS AGAIN GIVEN THE THE INEFFECT-IVE MEDICATIONS. PLAINTIFF SPOKE TO THE RN AGAIN AND COMPLAINED ABOUT THE FACT THAT HE WAS NOT BEING SEEN BY THE DOCTOR AND ALL HE KEPT DOING WAS REPRESCRIBING THE SAME INEFFECTIVE MEDICATIONS. AS A RESULT OF THIS CONVERSATION PLAINTIFF WAS PRESCRIBED, THOUGH NOT SEEN, TRIPROLIDINE/PSEUDOEPHEDR(SUDIFED) BY ANOTHER DOCTOR, DR. GABRIEL S. BORGES. THIS PRESCRIPTION WAS GIVEN ON FEBRUARY 6, 2006.

23) ON FEBRUARY 9, 2006 PLAINTIFF RESUBMITTED ANOTHER SICK CALL SLIP COMPLAINING ABOUT THE FACT HE HAD NOT BEEN SEEN BY THE DOCTOR AND REQUESTED TO SPECIFICALLY BE EXAMINED THEREAFTER. (SEE EXHIBIT C) THEREAFTER, PLAINTIFF WAS SEEN BY DEFENDANT BORGES AND UNDERWENT A PHYSICAL EXAMINATION. DR. BORGES CONCLUDED FROM MERE OBSERVATION THE PLAINTIFF'S SINUS COMPLICATIONS WERE THE RESULT OF AN ABNORMAL TISSUE GROWTH IN THE RIGHT SINUS CAVITY HE BELIEVED TO BE A COMMON NASUL POLYPOSIS. HE ADVISED PLAINTIFF TO CONTINUE TAKING THE MEDICATION HE HAD PRESCRIBED(SUDIFED AND THE NASUL SPRAY PREVIOUSLY PRESCRIBED BY DR. WEDELL) FOR A MONTH AT WHICH TIME PLAINTIFF WOULD BE SCHEDULED FOR A FOLLOW-UP VISIT. PLAINTIFF EXPLAINED TO THE DOCTOR THE MEDICATION DR. WEDELL PRESCRIBED WAS INEFFECTIVE AND THE OTHER MEDICATION ONLY PROVIDED TEMPORARY RELIEF FOR A COUPLE OF HOURS, THEN HE WAS NOT ABLE TO BREATH OUT OF NOSE. THE DOCTOR INSISTED PLAINTIFF CONTINUE TO TAKE THE MEDICATIONS FOR THE PERIOD IN BETWEEN THE NEXT FOLLOW-UP VISIT. DURING THIS TIME PLAINTIFF'S BREATHING COMPLICATIONS BECAME WORSE. AT THE FOLLOW-UP VISIT PLAINTIFF INFORMED DR. BORGES OF THE FACT HIS BREATHING COMPLICATIONS HAD BECAME WORSE AND INFORMED HIM OF THE THE FACT THE MEDICATIONS WERE COMPLETELY INEFFECTIVE. AT THIS POINT

(12)

DR. BORGES EXPLAINED THAT THE ONLY WAY TO TREAT THE POLYPOSIS WAS TO HAVE IT SURGICALLY REMOVED AND THOSE ARRANGEMENTS WOULD HAVE TO BE MADE WITH AN OUTPATIENTTSPECIALTY SERVICE AT THE UC DAVIS(UCD) OTOLARYNGOLOGY CLINIC(ENT). PLAINTIFF-INQUIRED AND REQUESTED OF DR. BORGES TO MAKE THE NECESSARY ARRANGEMENTS FOR THE MEDICAL PROCEDURE. THE DOCTOR EXPLAINED, THAT BEFORE HE COULD SUBMIT SUCH A REQUEST FOR THE ENT, HE WAS FIRST REQUIRED BY THE HEALTH CARE MANAGER/CHIEF MEDICAL OFFICER(HCM/CMO) AT THE PRISON TO PURSUE ALTERNATE TREATMENTS. DR. BORGES STATED HE HAD TO PRESCRIBE ANY AND ALL SINUS MEDICATIONS TO SHOW THEY WERE INEFFECTIVE TO APPEASE A REQUEST FOR OUTPATIENT SERVICES. OVER THE COURSE OF THE NEXT TWO MONTHS DR. BORGES CONTINUED TO GUINPIG WITH THE PLAINTIFF'S CONDITION PRESCRIBING OTHER INEFFECTIVE MEDICATIONS(LORATADINE[CLARITIN], IPRATROPIUM NASUL SPRAY AND REPRE- SCRIBED THE SUDIFED). FINALLY, AFTER MONTHS OF INEFFECTIVE MEDICAL TREATMENT AND COMPLAINTS FROM THE PLAINTIFF OF NOT BEING ABLE TO BREATH OUT OF NOSE, HEADACHES, NONSTOP SINUS DRAIN(PLAINTIFF LITERALLY HAD TO PLUG HIS NOSE WITH TISSUE AT NIGHT WHEN IN BED TO KEEP SNOT FROM RUNNING OUT ON HIS LINEN), ON APRIL 17, 2006 DR. BORGES CLAIMED TO HAVE SUBMITTED THE HEALTH CARE SERVICES PHYSICIAN REQUEST FOR SERVICES(CDC FORM 7243) FOR AN OUTPATIENT DIAGNOSTIC PROCEDURE.(SEE EXHIBIT D[NOTE: THE CDC FORM REQUESTED TREATMENT/SERVICE TO BE ADMINI- STERED WITHIN A "ROUTINE" TIME FRAME. CDCR INMATE MEDICAL SERVICES PROGRAM POLICIES AND PROCEDURES(IMSPPP), CHAPTER 8 SEC.III A(2) MANDATE "ROUTINE CONSULTATIONS OR PROCEDURES SHALL BE PROVIDED WITHIN NINTY (90) CALENDER DAYS OF THE PRIMARY CARE PHYSICIAN(PCP) SUBMITTING THE CDC FORM 7243]) DR. BORGES INFORMED PLAINTIFF OF THIS GRACE PERIOD. PLAINTIFF PROTESTED AND REQUESTED THE TREATMENT/SERVICE TO BE ADMINI- STERED WITHIN AN "URGENT" NEED FOR TREATMENT CONSIDERING THE FACT IT HAD BEEN A PERIOD EXTENDING FIVE MONTHS OF SUFFERING AND EXPERIENCING

(13)

1  FREQUENT HEADACHES AND PAIN IN THE GENERAL SINUS AREA. PLAINTIFF'S
2  REQUEST WAS DENIED. OVER THE NEXT FEW MONTHS DR. BORGES CONTINUED TO
3  EXPERIMENT PRESCRIBING INEFFECTIVE MEDICATIONS AS THE ABNORMAL TISSUE
4  MASS CONTINUED TO GROW AGGRESSIVELY, NONE TO WHICH ABATED THE PAIN OR
5  SUFFERING. IN LIGHT OF THE AGGRESIVE GROWTH DR. BORGES, IN AN ATTEMPT
6  TO TAKE AN EASIER AND LESS EFFICACIOUS COURSE OF TREATMENT TO DECREASE
7  THE INFLAMATION, PRESCRIBED A DEFLAMATORY MEDICATION(PREDNISONE), WHICH
8  CAUSED PLAINTIFF TO HAVE A SERIOUS ALLERGIC REACTION. DURING THIS PERIOD
9  PLAINTIFF REPEATEDLY REQUESTED OF DR. BORGES TO UPDATE THE OUT-PATIENT
10 TREATMENT/SERVICE TO "URGENT." PLAINTIFF'S REQUEST WERE DENIED. THE
11 ALLERGIC REACTION THE ABNORMAL MASS TO INCREASE IN SIZE AND COMPLICA-
12 TION.(SEE EXHIBITS E AND E[1])

13    24) **NOTE: AT THE POINT(4-17-07) IN WHICH DR. BORGES SUBMITTED THE**
14 **CDC FORM 7243 FOR THE OUT-PATIENT DIAGNOSIS FOR THE HCM(DEFENDANT KAREN**
15 **KELLY) IT WAS HER RESPONSIBILTY TO NOT ONLY APPROVE OF AND DELEGATE THE**
16 **ARRANGEMENTS FOR THE SERVICE AT UCD-ENT;ECT., BUT ALSO DETERMINE IF**
17 **DR. BORGES HAD PROVIDED PROPER MEDICAL CARE WITH REGARDS TO PLAINTIFF'S**
18 **MEDICAL CONDITION IN LIGHT OF THE FACT THAT UP UNTIL THIS POINT THERE**
19 **HAD BEEN NO LABORATORY RESULTS, TEST, ECT. TO AFFIRM DR. BORGES'S**
20 **MERELY OBSERVED DIAGNOSIS OF THE ABNORMAL TISSUE GROWTH TO BE THAT IN**
21 **WHICH HE ASSUMED TO BE A POLYPOSIS, DESPITE ITS AGGRESSIVE GROWTH AND**
22 **NEVERTHELESS DOCUMENTED THE TREATMENT/SERVICE TO BE "ROUTINE."**

23    25) JULY 23, 2006 AFTER WAITING IN AGONY APPROXIMATELY SIX TO
24 NINE MONTHS, PLAINTIFF RESUBMITTED ANOTHER SICK-CALL SLIP DUE TO
25 THE SEVERE PROGRESSION OF THE TISSUE MASS.(SEE EXHIBIT F) IT HAD GROWN
26 TO THE EXTENT OF COMPLETELY BLOCKING THE AIR PASSAGE AND WAS EXTENDING
27 OUT OF THE RIGHT NOSTRIL. THE CONDITION AT THIS POINT WAS CAUSING
28 DIZZINESS, MIGRAINES, BREATHING AND SLEEPING COMPLICATIONS. PLAINTIFF

(14)

1 WAS THEREAFTER SEEN BY THE RN AND PLEAD HIS COMPLICATIONS OF PAIN AND
2 ECT.(SEE EXHIBIT G) SOME THREE WEEKS LATER, AS A RESULT OF A REFERRAL
3 BY THE RN, ON AUGUST 9, 2006 PLAINTIFF WAS SEEN BY DR. VUONG DUC.
4 AFTER AN EXAMINATION, THE DOCTOR EXPLAINED TO THE PLAINTIFF THE
5 REASON HE HAD NOT BEEN SEEN AT THE ENT SPECIALIST WAS BECAUSE THE
6 PREVIOUS CDC 7243 FORM SUBMITTED BY DR. BORGES WAS SUBMITTED UNDER
7 A "ROUTINE" NEED FOR MEDICAL TREATMENT. PLAINTIFF INFORMED THE DOCTOR
8 OF THE FACT THAT THE 90 DAY GRACE PERIOD HAD LONG EXSPIRED AND
9 REQUESTED OF DR. DUC TO CALL THE SPECIALITY REFERRAL DIRECTOR, NANCY
10 DUNN, TO VARIFY THAT SUCH ARRANGEMENTS FOR THE ENT HAD IN FACT BEEN
11 ARRANGED. LITTLE TO PLAINTIFF'S KNOWLEDGE AT THE TIME THEY HAD NOT.
12 THE RESULT OF DR. DUC'S COMMUNICATION WITH DEFENDANT DUNN, LEAD TO
13 HIM UPDATING THE "ORIGINAL",ALLEGED TO HAVE BEEN FILED CDC 7243 FORM
14 PREVIOUSLY FILED BY DR. BORGES, TO AN "URGENT" REQUEST FOR TREATMENT/
15 SERVICE FOR THE ENT. IN ADDITION DR. DUC SUBMITTED OTHER REQUIRED
16 FORMS NOT SUBMITTED BY DR. BORGES DURNING THE INITIAL FILING.(SEE
17 EXHIBITS H AND H[1]) AT SAID TIME DR. DUC ADVISED PLAINTIFF HE WOULD
18 SEE THE ENT WITHIN DAYS.(NOTE: PRIOR TO THE AUGUST 8, 2007 MEDICAL
19 VISIT WITH DR. DUC, PLAINTIFF HAD BEEN PROVIDED A COPY OF DR. BORGES'
20 INCOMPLETE "ORIGINAL" CDC 7243 FORM. CONTRARY TO DR. DUC'S EXPLAINATION
21 AS TO WHY PLAINTIFF HAD NOT BEEN TAKEN TO THE ENT, THE INITIAL CDC 7243
22 FORM PREVIOUSLY SUBMITTED BY DR. BORGES WAS NEVER PROCESSED BY THE
23 UNIT MANAGER NURSE(UMN).*****NOTE THERE IS NO RECEPTION DATE STAMP,
24 COMPARED TO THE "ORIGINAL" RESUBMITTED CDC 7243 FORM COMPLETED AND
25 UPDATED TO "URGENT" BY DR. DUC ON AUGUST 8, 2006; STAMPED RECEIVED
26 "AUGUST 10, 2006."(SEE EXHIBITS D AND H) DR. BORGES ALSO FAILED TO
27 FILE THE CDC FORM 7221, PHYSICIAN'S ORDER, AND THE CDC FORM 7230,
28 INTERDISCINARY PROGRESS NOTE; AS MANDATED IN THE IMSPPP, CHAPTER 8

(15)

1  SEC.IIIA(1-4). ABOUT A YEAR THEREAFTER, ON AUGUST 3, 2007 PLAINTIFF
2  UPON REQUEST WAS AFFORDED ANOTHER OLSEN REVIEW WHICH RESULTED IN THE
3  DISCOVERY, DR. BORGES AND/OR DEFENDANT NANCY DUNN HAD DECITFULLY
4  REPLACED THE ORIGINAL CDC 7243 FORM INITIALLY SUBMITTED BY DR. BORGES,
5  WITH A DATED FORM, DATED TO HAVE BEEN RECEIVED ON APRIL 20, 2006.
6  THIS TO PLAINITIFF WAS AN INGENIOUS PLOY TO COVER DR. BORGES'S RECK-
7  LESSNESS IN FAILING TO PROPERLY SUBMIT THE FORM(S) BACK IN APRIL OF
8  2006, DUE TO THE FACT THAT PLAINTIFF HAD COPIES OF THE FORM MONTHS
9  THEREAFTER AND IT HAD NO RECEPTION DATE STAMP AND THE FACT DR. DUC
10 HAD USED THE "ORIGINAL" FORM DRAFTED BY DR. BORGES TO RESUBMIT THE
11 "URGENT" REQUEST FOR THE OUT-PATIENT SERVICES, THAT WAS DATED AS
12 HAVING BEEN RECEIVED ON AUGUST 10, 2006.

(16)

1

2

3     26) AFTER DR. DUC PROPERLY FILED THE "URGENT" MEDICAL REQUEST FOR

4 OUTPATIENT SPECIALITY SERVICES AT THE ENT, PLAINTIFF WAITED IN AGONY

5 FOR THREE DAYS AND THEREAFTER HAVING NOT BEEN SEEN BY THE SPECIALIST

6 FILED AN ADMINISTRATIVE GRIEVANCE(602) ON AUGUST 11, 2006.(SEE EXHIBIT

7 I) IT WAS INITIALLY SCREENED OUT AUGUST 18, 2006 ON ACCOUNT PLAINTIFF

8 WAS REQUESTED TO PROVIDE A COPY OF THE UPDATED FORM DR. DUC HAD RE-

9 SUBMITTED.(SEE EXHIBIT I[1], **NOTE: THE REQUESTED FORM ON THE SCREENING**

10 **SHEET WAS INCORRECT, THE CORRECT FORM WAS CDC 7243)**

11     27) SEVERAL WEEKS PRIOR TO AUGUST 29, 2006 PLAINTIFF SEIZED THE

12 OPPORTUNITY TO PERSONALLY ADDRESS HIS CONDITION WITH ASSISTANT

13 ASSOCIATE WARDEN MANDEVILLE. DEFENDANT MANDEVILLE WAS ON THE C-FACILITY

14 COMPOUND. PLAINTIFF EXPLAINED THE TEDIOUS PROCESS AND THE FACT HE

15 HAD NOT BEEN SEEN BY A SPECIALIST IN FACE OF "URGENT" MEDICAL NEED

16 DUE TO AN EVER-INCREASING GROWTH OF AN ABNORMAL TISSUE IN HIS SINUS

17 CAVITY. PLAINTIFF EXPLAINED THE PAIN AND SUFFERING HE WAS EXPERIENCING

18 AND SHOWED DEFENDANT MANDEVILLE THE MASS, WHICH AT THIS TIME WAS

19 LITERALLY HANGING OUT OF HIS NOSE. DEFENDANT MANDEVILLE INFORMED

20 PLAINTIFF TO CONTACT,VIA "INMATE REQUEST FOR INTERVIEW" FORM, THE

21 HCM/CMO DR. KELLY. PLAINTIFF DID AS INSTRUCTED AND AFTER SEVERAL WEEKS

22 TO NO AVAIL, AGAIN SPOKE TO DEFENDANT MANDEVILLE. ON AUGUST 29, 2006

23 PLAINTIFF INFORMED DEFENDANT MANDEVILLE OF THE FACT HE DID NOT RECEIVE

24 A RESPONSE FORM THE HCM/CMO. QUOTING DEFENDANT MANDEVILLE, "YOU KNOW

THE DOCTORS HERE ARE QUACKS." HE WENT ON TO COMMENT TO THE POSSIBILITY

25 OF THE PAPERWORK BEING OVERLOOKED, AND INDICATED THIS WAS A COMMON

26 ACCURANCE WITH THE MEDICAL STAFF HERE AT CSP-SAC. HE THEN PASSED THE

27 BUCK AGAIN BY INFORMING PLAINTIFF TO CONTACT, VIA "INMATE REQUEST FOR

28 INTERVIEW," RICK HILL. PLAINTIFF DID AS INSTRUCTED.(SEE EXHIBIT J)

(17)

28) ON AUGUST 31, 2006 PLAINTIFF WAS FINALLY TAKEN TO THE OUTPATIENT SPECIALITY CLINIC AT UCD ENT, AFTER CLOSE TO A YEAR OF PAIN AND SUFFERING AND COMPLAINTS TO THE MEDICAL STAFF AND DEFENDANT MANDEVILLE. THEREAFTER PLAINTIFF WAS PROVIDED AN OLSEN REVIEW OF HIS MEDICAL FILE, WHEREAS HE OBTAINED COPIES OF OTHER RELEVANT MEDICAL DOCUMENTS REGARDING THE TREATMENT, OR LACK OF IT AT THE PRISON; SPECIFICALLY THE UPDATED CDC 7243 FORM REQUEST FOR "URGENT" MEDICAL MEDICAL TREATMENT RESUBMITTED BY DR. DUC. PLAINTIFF THEREAFTER RE-SUBMITTED THE 602 ON SEPTEMBER 18, 2006 DUE TO THE DELAYS IN MEDICAL TREATMENT AS MANDATED BY IMSPPP CHAPTERS 8 AND 10. AS NOTED THROUGHOUT THE 602, THE DOCTORS AT CSP-SAC AND OTHER MEDICAL STAFF FAILED TO TIMELY SCHEDULE THEREAFER THE INITIAL ENT VISIT, FOLLOW-UP APPOINTMENTS AND RECOMMENDATIONS BY THE ENT. IN ADDITION DR. BORGES DELAY OF PROVIDING EFFECTIVE TREATMENT PRESENTED THE PROSPECT OF UNNECESARY PAIN AND SUFFERING.****NOTE: ON NOVEMBER 6, 2006 THE 602 WAS GRANTED AT THE FIRST LEVEL.

29) AT THE INITIAL VISIT AT ENT, PLAINTIFF WAS INFORMED BY DR. VISHAL DOCTOR THE NATURE OF THE TISSUE MASS COULD BE A NUMBER OF VARIOUS PATHOLOGIES, SUCH AS A PAPILLOMA(TUMOR), NASUL CARINOMA (CANCER) OR A POLYPOSIS. THE DOCTOR FIRMLY STATED BEFORE PROPER DIAGNOSIS AND EFFECTIVE TREATMENT COULD BE ADMINISTERED, A CT SCAN AND BIOPSY WOULD HAVE TO BE PERFORMED TO DETERMINE THE EXTENT OF THE GROWTH AND NATURE OF THE MASS, BEING THAT IT COULD HAVE GROWN INTO THE BRAIN OR OTHER VITAL AREAS. HE INQUIRED OF THE PLAINTIFF IF ANY OF THOSE PROCEDURES HAD BEEN PERFORMED PREVIOUSLY IN LITE OF DR. BORGES' DIAGNOSIS. PLAINTIFF EXPLAINED THE ONLY PROCEDURE. DR. BORGES HAD MADE TO DETERMINE THE NATURE OF THE TISSUE MASS WAS A VISUAL EXAMINATION AND NO SUCH PROCEDURES AS DESCRIBED BY DR. DOCTOR TO DETERMINE THE PATHOLOGY WERE EVER MADE BY DR. BORGES OR

(18)

1  ANY OF THE OTHER MEDICAL STAFF AT CSP-SAC.(SEE DR. DOCTOR'S REPORT,
2  EXHIBIT K) THE DOCTOR SUBMITTED A REQUEST FOR A CT SCAN ON THIS VERY
3  DAY TO THE PRISON MEDICAL STAFF. BUT BECAUSE SPECIALTY CLINIC RECOM-
4  MENDATIONS HAVE TO BE APPROVED BY THE PCP AND HCM/CMO AT CSP-SAC
5  BEFORE PROCEEDING; AND THE FACT THE RECOMMMENDATIONS ARE NOW ELECTRONI-
6  CALLY FAXED TO CSP-SAC, ANOTHER TEDIOUS PROCESS, INSTEAD OF THE TRADI-
7  TIONAL METHOD OF HAVING THE TRANSPORTATION CUSTODY CORRECTIONAL OFFICER
8  RETURN THE SAME DAY WITH THEM; BOTH THE PROCESS OF APPROVING AND
9  FAXING THE RECOMMENDATIONS, DELAYED THE REQUEST FOR CLOSE TO TWO
10 MONTHS. ON SEPTEMBER 20, 2006 THE FAX WAS RECEIVED. THEREAFTER, THE
11 PROCESS WAS FUTHER DELAYED ON ACCOUNT IT WAS NOT PROPERLY HANDLED AS
12 AN "URGENT" MEDICAL PRIORITY AS MANDATED BY IMSPPP CHAPERS 8 AND 10.

13     30) PRIOR TO THE RECEPTION OF THE ENT RECOMMENDATION FOR THE CT
14 SCAN, ON SEPTEMBER 16, 2006 PLAINTIFF WAS SEEN AT AN UNCOORDINATED
15 FOLLOW-UP VISIT, WHEREAS THE RECOMMENDATIONS FOR THE CT SCAN HAD NOT
16 BEEN RECEIVED OR REVIEWED. PLAINTIFF INFORMED DR. JASDEEP BAL, WHO
17 WAS NOW OVERSEEING PLAINTIFF'S MEDICAL CARE AT CSP-SAC, THAT THE ENT
18 REQUESTED A CT SCAN IN AUGUST. PLAINTIFF COMPLAINED OF THE URGENCY
19 OF THE MEDICAL CONDITION AND EXPLAINED THE DISCOMFORT HE HAD BEEN
20 EXPERIENCING FOR CLOSE TO A YEAR RELATED TO THE GROWTH OF THE TISSUE
21 MASS. DR. BAL ASSURED HIM THAT HE WAS AND WOULD DO ALL HE COULD DO,
22 QUOTING,"IN FACE OF THE INCOMPENTANT SPECIALITY CLINIC REFERRAL STAFF.
23 DR. BAL ATTEMPTED TO CONTACT THE REFERRAL STAFF AT CSP-SAC, TO NO
24 AVAIL, TO CONFIRM AN APPOINTMENT FOR THE CT SCAN ARRANGEMENT. HE
25 ASSURED PLAINTIFF HE WOULD CONTACT THE REFERRAL STAFF LATER THAT DAY
26 TO OBTAIN THE RECOMMENDATIONS FROM ENT AND ARRANGE, IF NEEDED, THE
27 APPOINTMENT.(SEE DR. BAL'S DOCUMENTED COMMENTS...EXHIBIT L) AGAIN, THE
28 REQUEST FOR THE CT FROM ENT WAS NOT RECEIVED AT CSP-SAC UNTIL
   SEPTEMBER 20, 2006.[NOTE: IMSPPP CHAPTER 8 SEC.III F(5), THE PCP

1  (DR. BAL) SHALL REVIEW THE CONSULT REPORT WITHIN THREE BUSINESS DAYS.
2  THEREAFTER HE IS TO COMPLETE A CDCR(CDC) FORM 7243 FOR EACH SERVICE
3  RECOMMENDED BY THE SPECIALTY PROVIDER(ENT) AS MANDATED BY SEC.III
4  H(1-3)] THE ORDER FOR THE CT WAS NOT REQUESTED UNTIL OCTOBER 3, 2006
5  BY DR. BAL. THE PLAINTIFF DID NOT UNDERGO THE PROCEDURE UNTIL OCTOBER 25,
6  2006.(SEE EXHIBIT M) DURING THE DELAY, PLAINTIFF CONTINUED TO SUFFER
7  PHYSICAL AND MENTAL ANGUISH RELATED TO THE MEDICAL CONDITION.

8      31) ON OCTOBER 31, 2006 THE RESULTS OF THE CT WERE FAXED TO
9  CSP-SAC. THEREAFTER, AT A FOLLOW-UP VISIT AT ENT, DR. JAMES R. TATE
10 EXPLAINED RESULTS. IT REVEALED THAT OVER THE PERIOD OF TIME THE
11 PLAINTIFF HAD BEEN COMPLAINING TO THE MEDICAL STAFF AT CSP-SAC REGARD-
12 ING SINUS COMPLICATIONS, A TUMOR HAD GROWN TO THE EXTENT OF COMPLETELY
13 FILLING AND DESTROYING THE RIGHT SINUS CAVITY AND WAS GROWING INTO THE
14 LEFT.(SEE REPORT, EXHIBIT N) THE DOCTOR WENT ON TO DESCRIBE THE
15 SURGICAL PROCEDURE REQUIRED TO REMOVE IT. HE EXPLAINED AN EXTENSIVE
16 LATERAL RHINOTOMY PROCEDURE THAT WOULD LEAVE THE PLAINTIFF PERMANENTLY
17 DISFIGURED. A THREE INCH INCISION WOULD HAVE TO BE MADE ON HIS FACE TO
18 REMOVE THE TUMOR DUE TO ITS EXTENT IN GROWTH. DR. TATE EXPLAINED,
19 GIVEN A CORRECT DIAGNOSIS AND PROPER MEDICAL TREATMENT, WITHOUT SUCH
20 DELAY AS HAD BEEN PRESENTED BY PLAINTIFF   IN INFORMING DR. TATE OF
21 THE TIME FRAME HE HAD BEEN MAKING COMPLAINTS TO THE MEDICAL STAFF AT
22 CSP-SAC, A LESS INVASIVE PROCEDURE COULD HAVE BEEN PERFORMED, WHICH
23 WOULD HAVE ONLY REQUIRED A SMALL INCISION TO BE MADE INSIDE THE MOUTH
24 ABOVE THE UPPER GUM LINE.( NOTE: THE CHIEF DOCTOR AND SURGEON AT UCD,
25 DR. PAUL J. DONALD, COMMENTED IN AN APRIL 10, 2007 LETTER TO THE
26 PLAINTIFF THAT, "THE LATERAL RHINOTOMY[AS DESCRIBED BY DR. TATE] IS
27 ONE OF THE STANDARD METHODS OF TREATING THIS PARTICULAR TUMOR..."
28 [SEE EXHIBIT O] ALSO SEE EXHIBIT "P" STATING THAT, "IT WAS THEREFOR

(20)

RECOMMENDED THAT HE(PLAINTIFF) UNDERGO LATERAL RHINOTOMY APPROACH
FOR RESECTION OF THIS TUMOR DUE TO ITS EXTENT.") DR. TATE ATFER
EXPLAINING THE FOREMENTIONED, DISCUSSED THE NEED TO OBTAIN THE PATH-
OLOGY ON THE TUMOR BEFORE THEY COULD TREAT AND OPERATE.

32) AFTER FURTHER DELAY, ON NOVEMBER 29, 2006 PLAINTIFF UNDERWENT
A BIOPTIVE SURGERY TO DETERMINE THE PATHOLOGY OF THE TUMOR. SUBSEQUENT-
LY, HE WAS PRESCRIBED PAIN MEDICATION, VICODIN. THE FOLLOWING AFTERNOON
AT CSP-SAC, PLAINTIFF HAD AN ALLERGIC REACTION TO THE MEDICATION. AT
PILL-CALL HE INFORMED THE MEDICAL STAFF OF THE REACTION. THEY RESPONDED
BY DISCONTINUING THE MEDICATION AND RUSHING HIM TO THE C-FACILITY
CLINIC FOR A BENADRYL INJECTION TO CALM THE REACTION. BEING THAT
MEDICAL STAFF DISCONTINUED THE VICODIN, PLAINTIFF REQUESTED OF THE
MEDICAL STAFF TO CONTACT THE DOCTOR TO REPRESCRIBE AN ALTERNATIVE. RN
RICK NICHOLSON REFUSED THE REQUEST AND TOLD THE PLAINTIFF HE WAS
GOING TO HAVE TO WAIT UNTIL THE FOLLOWING DAY TO SEE THE DOCTOR. THE
PLAINTIFF REMAINED IN AGONY FOR THE NEXT 24 HOURS DUE TO THE FACT
THE FOLLOWING MORNING WHEN HE FINALLY WAS ABLE TO SEE DR. BAL REGARDING
AN ALTERNATIVE PAIN MEDICTION, IT WAS NOT UNTIL LATER IN THE EVENING
HE WAS PROVIDED RELIEF. THE FOLLOWING MORNING(12-02-06), MEDICAL STAFF
INFORMED PLAINTIFF AT PILL-CALL THE ALTERNATIVE PAIN MEDICATION WAS
NOT AVAILABLE DUE TO THE FACT THE PHARMACY WAS OUT OF STOCK. PLAINTIFF
REMAINED IN AGONY. AT THREE O' CLOCK PM THE PAIN BECAME UNBEARABLE.
HE BEGAN TO EXPERIENCE SERVE PAIN, DIZZINESS AND A MIGRAINE DUE TO
THE LACK OF PAIN MEDICATION. THE TOWER CONTROL OFFICER WAS NOTIFIED
OF THESE COMPLICATIONS AND IMMEDIATELY CONTACTED THE MEDICAL STAFF TO
REPORT THE SITUATION. THEY INFORMED THE OFFICER THE MAIN PHARMACY
WAS OUT OF STOCK AND YET ANOTHER ALTERNATIVE WAS BEING SOUGHT. IN
TOTAL, ANOTHER 24 HOURS HAD ELAPSED BEFORE PLAINTIFF WAS PROVIDED

(21)

1 RELIEF AT 7:00pm.(**NOTE: THE CENTRAL PHARMACY IS LOCATED ON THE SAME**
2 **COMPOUND AS CSP-SAC. SUCH DELAY WAS UNNECESSARY BECAUSE ALL IT**
3 **REQUIRED FOR PLAINTIFF TO RECEIVE THE ALTERNATIVE MEDICATION WAS FOR**
4 **THE MEDICAL STAFF TO GO GET IT)** IN ADDITION, AFTER THE BIOPTIVE
5 PROCEDURE, A NASUL SPRAY WAS PRESCRIBED TO REDUCE INFLAMMATION AND
6 BLEEDING STEMMING FROM THE SURGERY. THIS MEDICATION WAS NOT RECEIVED
7 UNTIL TWO DAYS AFTER THE SURGERY. A 602 WAS FILED, THOUGH DENIED, IT
8 CORROBORATES THE FACTS STATED HEREIN WITH ITS ADMINISTRATIVE RESPONSE.
9 (SEE EXHIBIT Q)

10 33) DURING THE FIRST WEEK OF DECEMBER OF 2006, PLAINTIFF WAS
11 INFORMED BY DR. SCOTT FULLER AT A POST-OPERATIVE FOLLOW-UP AT THE ENT
12 THAT THE RESULTS OF THE BIOPSY REVELED THE PATHOLOGY OF THE TUMOR
13 WAS A INVERTED PAPILLOMA. THIS WAS CONTRARY TO DEFENDANT BORGES
14 RECKLESS MISDIAGNOSIS THAT THE TUMOR WAS A POLYPOSIS. DR. FULLER
15 REITERATED ON THE SURGERICAL PROCEDURES REQUIRED TO TREAT THE CONDITION
16 WHICH DR. TATE HAD PREVIOUSLY DISCUSSED WITH THE PLAINTIFF.(SEE DR.
17 FULLER'S REPORT, EXHIBIT R,****NOTE: AS STATED IN THE REPORT,"...A
18 **BOOKING SLIP HAS BEEN SUBMITTED AND WE[ENT] ARE WAITING AN OR DATE**
19 **AND PREOP DATE AT THIS POINT IN TIME."****NOTE: AT THIS POINT OR ANY**
20 **TIME PRIOR TO THESE REQUEST FROM THE MEDICAL STAFF AT CSP-SAC OR ENT, WERE**
21 **PLAINTIFF'S MEDICAL NEEDS HANDLED ACCORDINGLY AS "URGENT" MEDICAL**
22 **PRIORITY AS REQUESTED AND MANDATED IN THE IMSPPP.)**

23 34) SHORTLY BEFORE THE CHRISTMAS HOLIDAY PLAINTIFF WAS SEEN BY
24 DR. BAL AT A FOLLOW-UP VISIT AT CSP-SAC. THE DOCTOR WAS UNAWARE OF
25 THE RECOMMENDATIONS FROM ENT FOR THE LATERAL RHINOTOMY PROCEDURE.
26 AFTER SOME EXPLAINATION FROM THE PLAINTIFF AND A REQUEST TO CONTACT
27 CSP-SAC SPECIALTY REFFERAL CLINIC SERVICES TO VERIFY THE ARRANGEMENTS
28 FOR THE SURGERY HAD BEEN MADE, DR. BAL CONTACTED DEFENDANT DUNN IN
REGARDS OF THE MATTER. SHE INFORMED THE DOCTOR THEY WERE UNDER THE

(22)

IMPRESSION THE SURGERY HAD ALREADY BEEN PERFORMED. THE DATES THEY HAD WERE CONSISTANT WITH THE BIOPTIVE PROCEDURE, AT SAID TIME THE DOCTOR EXPLAINED THEY HAD MISTAKEN THAT PROCEDURE FOR THE "URGENTLY" NEEDED LATERAL RHINOTOMY. AFTER FURTHER EXPLAINATION DEFENDANT DUNN AND DR. BAL HAD A MEETING AT THE MINDS AND IT WAS UNDERSTOOD THE SURGERY WOULD BE ARRANGED.

35) AFTER SEVERAL WEEKS OF WAITING IN AGONY THE PLAINTIFF RESUBMIT-TED ANOTHER SICK CALL SLIP IN JANUARY OF 2007 AND WAS SEEN THEREAFTER ON THE 18th OF THE MONTH BY NURSE PRACTITIONER CHERYL BAKEWELL. PLAINTIFF EXPLAINED TO MS. BAKEWELL THE CIRCUMSTANCES OF THE PRIOR VISIT WITH DR. BAL AND REQUESTED OF HER TO CONTACT DEFENDANT DUNN AT THE SPECIALTY REFERRAL REGARDING IF THERE HAD BEEN A DATE SET FOR THE URGENT LATERAL RHINOTOMY SURGERY. AFTER CONTACTING THE REFERRAL STAFF, MS. BAKEWELL WAS INFORMED THAT NO SUCH ARRANGEMENTS HAD BEEN MADE FOR THE OPERATION, NOR HAD DR. BAL SUBMITTED THE NECESSARY CDC 7243 FORM TO REQUEST SUCH ARRANGEMENTS. AFTER A BRIEF DISCUSSION WITH THE REFERRAL STAFF, SHE INFORMED THEM THIS WAS AN "URGENT" MEDICAL PRIORITY AND AN IMMEDIATE APPOINTMENT NEEDED TO BE ARRANGED FRO THE SURGERY TO REMOVE THE TUMOR BEFORE IT BECAME CANCEROUS. THE REFERRAL STAFF INSTRUCTED HER TO SUBMIT A CDC 7243 FORM. SHE DID SO, NOTING THE REQUEST FOR MEDICAL TREATMENT AS "URGENT." (SEE MS. BAKEWELL'S CDC FORM, EXHIBIT S****NOTE THE "URGENT" MEDICAL REQUEST AGAIN WAS MADE ON JANUARY 18, 2007, SPECIALTY REFERRAL STAFF RECEIVED MS. BAKEWELL'S CDC 7243 FORM ON JANUARY 22, 2007. PLAINTIFF WAS NOT ADMITTED FOR SURGERY UNTIL FEBRUARY 26, 2007. THE PROCEDURES TAKEN HERE WERE CONTR-ARY TO IMSPPP)

36) AFTER THE SURGERY THE PLAINTIFF REMAINED AT THE UCD HOSPITAL FOR SEVERAL DAYS THEREAFTER FOR OBSERVATION. HE HAD SUCCESSFULLY UNDERWENT THE LATERAL RHINOTOMY PROCEDURE TO REMOVE THE TUMOR WHEREAS

(23)

AN INCISION WAS MADE BELOW THE CORNER OF THE INNER RIGTH EYE, DOWN AND AROUND THE BASE OF THE NOSE.(SEE INPATIENT OPERATION RECORD, EXHIBIT T) WHILE RESIDING AT THE HOSPITAL PLAINTIFF EXPERIENCED ACUTE PAIN ASSOCIATED TO THE SURGERY, AS A RESULT THE UCD MEDICAL STAFF AND PAIN MANAGEMENT SERVICE PHARMACIST PRESCRIBED A STRICT REGIMEN OF VARIOUS PAIN MEDICATION.(SEE EXHIBIT U,****NOTE: **ON THE SECOND PAGE OF THE PAIN MANAGEMENT SERVICE PHARMACIST PHYSICIANS PROGRESS RECORD, THE AUTHOR CLEARLY INDICATED SAID PAIN MEDICATION WERE TO BE MADE AVAILABLE(CONTINUED) AT THE PRISON(CSP-SAC). THIS WAS INDICATED DUE TO THE FACT PLAINTIFF HAD INFORMED THE UCD MEDICAL STAFF OF THE EVENTS RELATED TO THE PRIOR SURGERY WHEREAS HE HAD COMPLICATIONS RECEIVING RELIEF FOR PAIN RELATED COMPLICATIONS STEMMING FROM THE BIOPTIVE SURGERY. PLIANTIFF'S COMMENTS WERE DOCUMENTED HERE AS WELL.)**

37) AFTER SEVERAL DAYS OF BEING IN THE HOSPITAL THE PLAINTIFF WAS RETURNED TO THE PRISON'S GENERAL POPULATION. BEFORE RETURNING TO THE MAINLINE, PLAINTIFF WAS TAKEN TO THE A-FACILITY NURSES STATION TO HAVE HIS MEDICATIONS AND OTHER MEDICAL ORDERS FOR TREATMENT LOGGED. THE ATTENDING RN(WHO THE STAFF HERE AT CSP-SAC HAS REFUSED TO PROVIDE PLAINTIFF WITH A NAME) PROTESTED THE RECOMMENDATIONS OF PAIN MEDICATION PRESCRIBED BY THE MEDICAL STAFF AT UCD, AND URGED DR. BAL TO REDUCE THEM. PLAINTIFF EXPLAINED TO THE RN THE ACUTE PAIN ASSOCIATED TO THE SURGERY AND THE NEED FOR THE MEDICATIONS AS PRESCRIBED. DESPITE THE ORDERS OF THE UCD MEDICAL STAFF AND PLAINTIFF'S OBJECTIONS, LITTLE TO HIS KNOWLEDGE AT THE TIME THE ORDERS FOR THE PAIN MEDICATION(PERCOCET) WAS REDUCED.

38) LATER THAT AFTERNOON AFTER RETURNING FROM THE HOSPITAL, MARCH 6, 2007, AND HAVING BEEN PLACED BACK IN THE GENERAL POPULATION ON C-FACILITY, PLAINTIFF BEGAN TO EXPERIENCE SERVE PAIN COMPLICATIONS AND DIZZINESS. HE REQUESTED OF THE SIX(6) BLOCK TOWER CONTROL OFFICER

(24)

GREGORY HAMPTON TO CONTANT THE MEDICAL STAFF WITH REGARDS OF HIS SYMPTOMS AND A REQUEST FOR PAIN MEDICATION. AFTER CONTACTING THE MEDICAL STAFF, C/O HAMPTON INFORMED PLAINTIFF THAT MEDICAL STAFF ATTENDANT LVN MARCUS WINTON REFUSED TO PROVIDE PLAINTIFF WITH THE MEDICATION TO RELIEVE HIS PAIN AND INFORMED THE DEFENDANT HAMPTON THAT HE WOULD GIVE IT TO THE PLAINTIFF AT THE EVENING PILL CALL DUE TO THE FACT IT WAS WELL INTO THE AFTERNOON(APPROXIMATELY 2:30pm). PLAINTIFF EXPLAINED TO C/O HAMPTON THAT HE HAD NOT BEEN PROVIDED PAIN RELIEF MEDICATIONS SINCE HE LEFT THE HOSPITAL, AND WAS EXPERIENCING SERVE PAIN. C/O HAMPTON SAID HE HAD DONE ALL HE COULD DO AND FOR PLAINTIFF TO TAKE THE MATTER UP WITH THE MEDICAL STAFF WHEN HE HAD THE OPPORT- UNITY. PLAINTIFF REQUESTED OF THE OFFICER TO ALLOW HIM TO ADDRESS THE MEDICAL REQUEST TO THE MEDICAL STAFF PERSONALLY, C/O HAMPTON REFUSED THE REQUEST AND ORDERED PLAINTIFF TO RETURN TO HIS CELL. OVER THE NEXT FEW HOURS, SHORTLY AFTER DINNER(APPROXIMATELY 5:30pm), PLAINTIFF'S COMPLICATIONS BECAME WORSE. HIS ROOMMATE, DERRICK LAKEY, HAD TO AID PLAINTIFF BY REQUESTING OF C/O HAMPTON TO AGAIN NOTIFY MEDICAL STAFF OF PLAINTIFF'S CONDITION AND THE FACT IT HAD BECAME WORSE. C/O HAMPTON REFUSED TO CALL THE MEDICAL STAFF, RESTATING WHAT HE HAD BEEN INFORMED OF EARILER BY LVN WINTON. AT THIS TIME, C/O OMAND CAME TO THE CELL TO CHECK ON PLAINTIFF'S CONDITION. HE REQUESTED OF PLAINTIFF TO COME TO THE CELL DOOR, AS HE ATTEMPTED TO WALK TO THE DOOR, PLAINTIFF LOST CONSCIOUSNESS AND FELL TO THE FLOOR.(SEE EXHIBIT V, REPORT BY RN RICK NICHOLSON, DEPICTING C/O OMAND'S STATEMENTS) PLAINTIFF WAS THEN RUSHED TO THE C-FACILITY CLINIC WERE HE WAS FINALLY GIVEN ONE(1) TAB OF PERCOCET FOR PAIN. PLAINTIFF EXPLAINED TO THE MEDICAL STAFF, SPECIFICALLY LVN WINTON, THAT THE ONE(1) TABLET WAS INEFFECTIVE TO RELIEVE HIS PAIN SYMPTOMS AND REQUESTED OF LVN WINTON TO ADMINISTER ANOTHER, LVN WINTON INFORMED THE PLAINTIFF THAT THE

(25)

ORDER FOR THE MEDICATION ONLY ALLOWED ONE(1) PERCOCET TO BE GIVEN THREE TIMES A DAY. THIS WAS CONTRARY TO THE ORDERS OF THE UCD MEDICAL STAFF'S RECOMMENDATIONS FOR PAIN MEDICATION RELIEF, TO WHICH PLAINTIFF EXPLIANED TO LVN WINTON. THEREAFTER, PLAINTIFF WAS TRANSFERRED, BY HIS OWN REQUEST, TO OHU FOR OBSERVATION AFTER RN NICHOLSON ATTEMPTED TO SEND HIM BACK TO THE GENERAL POPULATION IN HIS CURRENT STATE OF PHYSICAL IMPAIRMENT. THERE HE ADDRESSED HIS COMPLAINT AGAIN TO DR. BAL WITH REGARDS TO THE CHANGING OF THE RECOMMENDED DOSAGE OF PAIN MEDICATION. DR. BAL'S RESPONSE WAS HE WOULD LOOK INTO WHAT MAY HAVE BEEN AN OVERSIGHT IN THE DOCUMENTATION OF THE ORDERS. PLAINTIFF REMAIN-IN OHO FOR TWO DAYS; THE CORRECT DOSAGE WAS NEVER RECEIVED AS UCD PRE-SCRIBED, AND PLAINTIFF OFTEN REMAINED IN PAIN, DESPITE HIS COMPLAINTS.

39) ON MARCH 8, 2007 PLAINTIFF DID NOT RECEIVE PAIN MEDICATION (PERCOCET) AT NOON OR IN THE EVENING. THIS WAS BROUGHT TO THE ATTENTION OF MEDICAL STAFF LVN GLORIA FORSHAY, WHO BLATANTLY DISREGARDED PLAINTIFF'S REQUEST FOR THE MEDICATION IN TELLING HIM HE DID NOT HAVE AN ORDER FOR THE REQUESTED MEDICATIONS. THEREAFTER PLAINTIFF RECEIVED THE PERCOCET, THOUGH NOT THE PRESCRIBED DOSAGE AS RECOMMENDED BY UCD, AS A RESULT PLAINTIFF OFTEN REMAINED IN AGONY.

40) ON MARCH 9, 2007 PLAINTIFF DID NOT RECEIVE PAIN MEDICATION (MS CONTIN). THIS WAS BROUGHT TO THE ATTENTION OF THE MEDICAL STAFF, TO NO AVAIL. AS A RESULT PLAINTIFF REMAINED IN AGONY.

41) ON MARCH 11, 2007 PLAINTIFF SUBMITTED A SICK CALL SLIP TO LVN FORSHAY AND EXPLAINED TO HER HIS COMPLICATIONS OF PAIN IN FACE OF HER PROTESTATIONS THAT HE SHOULD NOT HAVE BEEN EXPERIENCING PAIN SINCE IT HAD BEEN LITTLE OVER A WEEK SINCE THE SURGERY. DESPITE HER PROTESTATIONS, PLAINTIFF INSISTED OF HER TO INFORM THE DOCTOR OF HIS NEED TO HAVE THE APPROPRIATE PAIN MEDICATIONS CONTINUED, BEING THEY WERE TO EXPIRE THE FOLLOWING DAY, OR HAVE THE DOCTOR PRESCRIBE HIM

(26)

1 SOMETHING ELSE BEING THAT THERE WAS AN OBVIOUS CONCERN WITH THE MEDICAL
2 STAFF AT CSP-SAC REGARDING PLAINTIFF HAVING THE RECOMMENDED MEDICATIONS
3 PRESCRIBED BY UCD. THE REQUEST FOR LVN FORSHAY TO NOTIFY THE DOCTOR
4 OF PLAINTIFF'S MEDICAL NEEDS WAS NEVER RECEIVED, NOR WAS THE SICK CALL
5 SLIP.

6 42) ON MARCH 12, 2007 MTA(WHO'S NOW A C/O) MYRA SPINKS BROUGHT
7 PLAINTIFF WHAT SHE DESCRIBED AS A "DEBRIDGED" DOSE OF PAIN MEDICATION
8 AFTER IT HAD EXPIRED. THEY WERE RECEIVED AT NOON AS WELL. MTA SPINKS
9 WAS UNCLEAR AS TO REASON FOR THE "DEBRIDGED" DOSE OF MEDICATION, YET
10 OFFERED THE EXPLAINATION, IN LIGHT OF PLAINTIFF'S CONCERNS TO SEE
11 DOCTOR, "THAT IT WAS PROBABLY GIVEN UNTIL HE COULD SEE HIM." THAT
12 EVENING PLAINTIFF RECEIVED NOTHING FOR THE PAIN AND INFORMED THE
13 MEDICAL STAFF OF THE NEED FOR RELIEF, TO WHICH THEY RESPONDED TO NO
14 AVAIL. THE FOLLOWING MORNING(3-13-07) PLAINTIFF INFORMED MTA SPINKS
15 REGARDING THE PAIN HE HAD BEEN EXPERIENCING SINCE THE FOLLOWING EVENING.
16 HE ALSO INFORMED HER THAT HE HAD NOT BEEN RECEIVING THE STOOL SOFTENERS
17 (DOCUSATE SODIUM AND THE BISACODYL PRESCRIBED BY DR. BAL) PRESCRIBED
18 BY THE UCD MEDICAL STAFF FOR CONSTIPATION RELATED TO THE PAIN MEDICATION
19 AND WAS EXPERIENCING ABDOMINAL PAINS DUE TO THE FACT HE HAD NOT A
20 BOWEL MOVEMENT IN SEVERAL DAYS. MTA SPINKS INFORMED PLAINTIFF SHE
21 WOULD SPEAK TO THE DOCTOR REGARDING HIS COMPLICATIONS AND ADVISED HIM
22 TO COME DOWN TO THE C-FACILITY CLINIC AT FIRST YARD RELEASE. PLAINTIFF
23 DID AS INSTRUCTED ONLY TO BE INFORMED BY MTA SPINKS THAT DR. WEDELL
24 HAD REFUSED TO ATTEND PLAINTIFF'S MEDICAL NEEDS. PLAINTIFF REMAINED
25 IN AGONY FOR A COUPLE OF DAYS AND WAS FORTUNATE TO HAVE A POST-OP
26 FOLLOW-UP APPOINTMENT AT UCD-ENT ON MARCH 16, 2007, WHEREAS HE WAS
27 PROVIDED A PRESCRIPTION FOR PAIN MEDICATION. ON MARCH 20, 2007
28 PLAINTIFF PERSONALLY SPOKE TO DR. WEDELL REGARDING HIS REFUSAL TO
PROVIDE MEDICAL CARE ATFER MTA SPINKS HAD INFORMED HIM OF PLAINTIFF'S

(27)

1 CONDITION, HIS EXCUSE WAS THERE WAS NO DOCUMENTATION REGARDING WHAT
2 MTA SPINKS HAD INFORMED HIM OF, SO HE TOLD HER TO GET OUT OF HIS
3 OFFICE.

4 43) IN ADDITION TO THE REQUEST MADE TO LVN FORSHAY FOR MEDICAL
5 TREATMENT AND HER REFUSALS, SHE REFUSED ON MARCH 18, 2007 TO PROVIDE
6 PLAINTIFF WITH STERILE CLEANING SUPPLIES, AS ORDERED BY BOTH THE
7 PHYSICIANS AT UCD AND CSP-SAC.

8 44) ON MARCH 28, 2007 PLAINTIFF FILED AN ADMINISTRATIVE COMPLAINT
9 (602) WITH REGARD OF THE NEGLIGENT AND MALICIOUS POST-SURGERY MEDICAL
10 CARE DATING FROM MARCH 6, 2007 TO MARCH 13th. THE 602 WAS GRANTED
11 IN PART AT THE SECOND LEVEL REVIEW AND DENIED AT THE DIRECTOR'S LEVEL
12 (SEE EXHIBIT W)

13 45) \*\*\*NOTE: IN ADDITION TO THE PREVIOUS STATEMENT OF FACTS WITH
14 REGARD TO THE DURATION OF TIME DR. BAL OVERSAW THE PLAINTIFF'S HEALTH
15 CARE, PRIOR TO THE EXTENSIVE LATERAL RHINOTOMY PROCEDURE, PLAINTIFF
16 REPEATEDLY INQUIRED OF THE DOCTOR REGARDING THE POSSIBILITY OF AN
17 EXTENSIVE(SPECIFICALLY PERMANENT DISFIGUREMENT) SURGICAL PROCEDURE TO
18 REMOVE THE TUMOR DUE TO ITS EXTENT. DR. BAL REPEATEDLY ASSURED THE
19 PLAINTIFF THAT THE PROCEDURES WOULD BE LESS INVASIVE. ALL THE WHILE
20 DR. BAL CONTINUED TO DELAY THE PROCESS OF PROVIDING MEDICAL TREATMENT
21 IN FACE OF THE FACT PLAINTIFF PERSISTANTLY MADE IT A POINT TO THE
22 DOCTOR THIS WAS A DOCUMENTED "URGENT" MEDICAL PRIORITY, TO WHICH HE
23 (DR. BAL) RESPONDED IN AGREEMENT AND EVEN EMPHASIZED THE POSSIBILITY
24 OF THE TUMOR BEING CANCEROUS, AND THE NEED TO GET PROPER DIAGNOSIS AND
25 TREATMENT.

26 46) ON NOVEMBER 11, 2007, PLAINTIFF WAS INFORMED BY C/O SPINKS
27 IN REGARDS TO THE INCIDENT WITH DR. WEDELL REFUSING TO PROVIDE
28 MEDICAL CARE TO THE PLAINTIFF ON MARCH 12, 2007, THAT AFTER DR.

(28)

1  WEDELL DISMISSED HER FROM HIS OFFICE IN FACE OF HER INFORMING HIM

2  OF PLAINTIFF'S URGENT MEDICAL NEED FOR PAIN MEDICATION TO RELIEVE

3  POST SURGERY SYMPTOMS, SHE PERSONALLY WENT, THEREAFTER AND ADDRESSED

4  THE PLAINTIFF'S MEDICAL NEEDS WITH DEFENDANT A. JENNINGS. SHE STATED

5  THAT DEFENDANT JENNINGS REFUSED TO ADDRESS DR. WEDELL'S REFUSAL TO

6  PROVIDE PLAINTIFF WITH ADEQUATE MEDICAL CARE. C/O SPINKS SAID SHE

7  SPECIFICALLY RECALLED THESE INCIDENTS BECAUSE PLAINTIFF WAS THE ONLY

8  PRISONER TO HER KNOWLEDGE WHO HAD UNDERWENT SUCH A PROCEDURE(LATERAL

9  RHINOTOMY) AND THE DISCOMFORT HE WAS EXPERIENCING WAS APPARENT. AS A

10 RESULT OF DEFENDANT JENNINS FAILING TO TAKE ACTION PLAINTIFF REMAINED

11 IN AGONY.

(29)

## CLAIM FOR RELIEF

### EIGHT AMENDMENT VIOLATION

### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

47) PLAINTIFF REFERS TO AND INCORPORATES BY REFERENCE HEREIN THE ALLEGATIONS OF PARAGRAPHS (1) THROUGH (46), INCLUSIVE.

48) PLAINTIFF'S MEDICAL CONDITION, AS DESCRIBED HEREIN, CONSTITUTES A SERIOUS MEDICAL NEED IN THAT FAILURE TO PROPERLY DIAGNOSE AND TREAT THE CONDITION HAS RESULTED IN FURTHER SIGNIFICANT INJURY. SAID INJURY HAS INCLUDED, BUT NOT NECESSARILY BEEN LIMITED TO, PERMANENT NERVE DAMAGE AND DISFIGUREMENT, AND VERY SEVERE PAIN AND SUFFERING. PLAINTIFF'S MEDICAL CONDITION ALSO SIGNIFICANTLY AFFECTED HIS ACTIVITIES IN PRISON EACH AND EVERYDAY.

49) PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT DEFENDANTS HAVE ACTED INTENTIONALLY IN THE MANNER DESCRIBED ABOVE AND WITH KNOWLEDGE OF PLAINTIFF'S SUFFERING AND THE RISK OF FURTHER SERIOUS HARM THAT HAS RESULTED FROM THEIR ACTIONS OR REFUSAL TO ACT.

50) DEFENDANTS' CONDUCT VIOLATES 42 U.S.C. § 1983, BECAUSE THAT CONDUCT CONSTITUTES DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS IN VIOLATION OF HIS EIGHT AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT.

51) AS A PROXIMATE RESULT OF THE DEFENDANTS' CONDUCT, PLAINTIFF HAS SUFFERED AND CONTINUES TO SUFFER GENERAL DAMAGES IN FORM OF NERVE DAMAGE, SEVERE PAIN AND SUFFERING AND EMOTIONAL DISTREESS. PLAINTIFF IS INFORMED AND BELIEVES, AND THEREON ALLEGES, THAT HE WILL CONTINUE TO SUFFER FROM PERMANENT NERVE DAMAGE IN THE FUTURE.

52) IN ACTING AS DESCRIBED HEREIN ABOVE, DEFENDANTS ACTED

(30)

DESPICABLY, KNOWINGLY, WILFULLY, AND MALICIOUSLY, OR WITH RECKLESS OR CALLOUS DISREGARD FOR PLAINTIFF'S FEDERALLY PROTECTED RIGHTS, ENTITLING PLAINTIFF TO AN AWARD OF COMPENSATORY AND PUNITIVE DAMAGES.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF, IVAN KILGORE, PRAYS FOR JUDGMENT BY JURY TRIAL AGAINST DEFENDANTS AS FOLLOWS:

1) FOR SPECIAL DAMAGES, ACCORDING TO PROOF;

2) FOR GENERAL DAMAGES, ACCORDING TO PROOF;

3) FOR PUNITIVE DAMAGES, ACCORDING TO PROOF;

4) FOR COST OF THE SUIT; AND

5) FOR SUCH OTHER AND FURTHER RELIEF AS THE COURT MAY DEEM JUST AND PROPER.

EXCUTED THIS _6_ DAY, OF _December_

_(signature)_
(PETITIONER)

(31)