IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IVAN KILGORE,

    Plaintiff,                      No. CIV S-07-2485 GEB DAD P

    vs.

RICHARD MANDEVILLE, et al.,

    Defendants.               <u>ORDER</u>

                                  /

        Plaintiff is a state prisoner proceeding pro se. Plaintiff has filed an amended complaint seeking relief pursuant to 42 U.S.C. § 1983 and has filed an application to proceed in forma pauperis under 28 U.S.C. § 1915.[1] This proceeding was referred to the undersigned magistrate judge in accordance with Local Rule 72-302 and 28 U.S.C. § 636(b)(1).

/////

/////

---

[1] On November 19, 2007, plaintiff filed his original complaint. Before the court had an opportunity to screen the complaint, plaintiff filed a motion for leave to amend his complaint together with a proposed amended complaint. Plaintiff is advised that the Federal Rules of Civil Procedure provide that a party may amend his or her pleading "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). In this case, defendants have not been served or filed a responsive pleading. Accordingly, plaintiff's motion for leave will be granted, and the case will proceed on plaintiff's amended complaint filed December 7, 2007.

1

1          Plaintiff has submitted an in forma pauperis application that makes the showing
2  required by 28 U.S.C. § 1915(a).  Accordingly, plaintiff will be granted leave to proceed in forma
3  pauperis.
4          Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  See
5  28 U.S.C. §§ 1914(a) & 1915(b)(1).  Plaintiff has been without funds for six months and is
6  currently without funds.  Accordingly, the court will not assess an initial partial filing fee.  See 28
7  U.S.C. § 1915(b)(1).  Plaintiff will be obligated to make monthly payments of twenty percent of
8  the preceding month's income credited to plaintiff's prison trust account.  These payments shall
9  be collected and forwarded by the appropriate agency to the Clerk of the Court each time the
10 amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  See 28 U.S.C.
11 § 1915(b)(2).
12         The court is required to screen complaints brought by prisoners seeking relief
13 against a governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C.
14 § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised
15 claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be
16 granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28
17 U.S.C. § 1915A(b)(1) & (2).
18         A claim is legally frivolous when it lacks an arguable basis either in law or in fact.
19 Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28
20 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an
21 indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,
22 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully
23 pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th
24 Cir. 1989); Franklin, 745 F.2d at 1227.
25         Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and
26 plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, ___ U.S. ___, ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 127 S. Ct. at 1965.  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

1  allegations concerning the involvement of official personnel in civil rights violations are not
2  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

3  In his amended complaint, plaintiff has identified as defendants Associate Warden
4  Richard Mandeville; Chief Medical Officer Karen Kelly; Dr. Jasdeep Bal; Dr. James R. Wedell;
5  Dr. Gabriel Borges; Registered Nurse Rick Nicholson; Vocational Nurse Marcus Winton;
6  Vocational Nurse Gloria Forshay; Correctional Officer Gregory Hampton; Registered Nurse
7  Nancy Dunn; Supervising Registered Nurse Allan Jennings; Dr. Troy Brimhall; and Correctional
8  Officer Myra Spinks.  Plaintiff alleges that defendants have been deliberately indifferent to his
9  medical needs in violation of the Eighth Amendment.

10  Specifically, plaintiff alleges that prior to December 2005, he started experiencing
11  breathing complications due to a sinus infection.  Plaintiff further alleges that defendant Dr.
12  Wedell prescribed him ineffective medication on three occasions.  Plaintiff alleges that he
13  complained to the registered nurse about the medication, and several weeks later, defendant Dr.
14  Borges prescribed a different medication without seeing plaintiff.  Plaintiff contends that he
15  subsequently submitted a sick call slip and, upon examination, Dr. Borges concluded that his
16  sinus complications were the result of abnormal tissue growth.  He advised plaintiff to continue
17  taking the medication and to return in a month for a follow-up visit.

18  Plaintiff alleges that his breathing complications worsened thereafter.  He alleges
19  that Dr. Borges told him surgery was necessary but that such arrangements would have to be
20  made with U.C. Davis and that he was first required by the health care manager to pursue
21  alternate treatments.  Plaintiff claims he later learned that Dr. Borges submitted merely a
22  "routine" health care services request form for an outpatient diagnostic procedure when he
23  should have submitted an "urgent" request because plaintiff had been suffering from frequent
24  headaches and sinus pain for five months by that time.  Plaintiff also contends that Dr. Borges
25  continued to experiment with less efficacious courses of treatment while the abnormal tissue
26  continued to grow at an aggressive rate.  Plaintiff alleges that he received prednisone to control

4

the inflammation, but experienced an allergic reaction to that medication. Plaintiff alleges that he repeatedly asked Dr. Borges to submit an urgent referral, but his requests were denied.

Plaintiff notes that Dr. Kelly, the Chief Medical Officer/Health Care Manager, was responsible for approving and delegating the arrangements for the outpatient services. In addition, plaintiff notes that Dr. Kelley was responsible for ensuring that Dr. Borges provided him with proper medical care.

Plaintiff alleges that, after waiting almost nine months for treatment, he resubmitted a sick call slip because the tissue mass was blocking his air passage and had extended out of his right nostril. In addition, plaintiff alleges that he was experiencing dizziness, migraines, and breathing and sleeping complications. Plaintiff saw Dr. Duc, who informed him that the reason he had not been seen by a specialist was because Dr. Borges submitted only a "routine" request for medical treatment. Plaintiff alleges that Dr. Duc contacted the speciality referral director, defendant Dunn, and she confirmed that no arrangements had been made for a consultation with a specialist. Dr. Duc then upgraded the original request to an "urgent" request for treatment and submitted additional forms that Dr. Borges had not.

Plaintiff alleges that he informed defendant Mandeville of his condition, told him that he had not yet seen a specialist and complained about the tedious process for obtaining treatment. Defendant Mandeville told him to contact defendant Kelly with an "inmate request for interview" form. Plaintiff alleges that he submitted the form but never heard from defendant Kelly. Defendant Mandeville then instructed him to submit an "inmate request for an interview" form with Rick Hill, and plaintiff did so.

Finally, after a year of waiting, plaintiff was taken to see Dr. Vishal at the outpatient speciality clinic at U.C. Davis who informed plaintiff that there were a number of conditions that could account for the tissue mass and that he would need a CT scan and a biopsy. Plaintiff alleges that the approval process for those diagnostic tests caused another two-month delay in his treatment.

1    Plaintiff alleges that next defendant Dr. Bal took over his treatment at CSP-
2 Sacramento and informed him that he would do all that he could to help plaintiff.  However,
3 plaintiff alleges that there were still delays in obtaining his CT scan and that during the delay he
4 continued to experience physical and mental anguish.
5    Plaintiff alleges that the CT scan revealed that invasive surgery was necessary to
6 remove the tumor and it would leave him permanently disfigured.  Plaintiff alleges that it was
7 explained by doctors that a less invasive procedure could have been performed, requiring only a
8 small incision, if there were not delays in his medical treatment.
9    On November 29, 2006, plaintiff underwent a biopsy and was prescribed Vicodin
10 to help manage his pain but suffered an allergic reaction to the medication resulting in plaintiff
11 being rushed to the clinic for a Benadryl injection.  Plaintiff asserts that he requested Nurse
12 Nicholson to ask the doctor for a different pain medication after the Vicodin was discontinued,
13 but he refused and told plaintiff he would have to wait until the following day to see the doctor.
14 Plaintiff alleges that he had to wait in agony for twenty-four hours until he saw Dr. Bal, who
15 prescribed a new pain medication only to learn that the pharmacy did not have the new in stock
16 and another twenty-four hour delay until he was finally provided an alternative pain medication.
17    Plaintiff alleges that the results of the biopsy revealed that he had an inverted
18 papilloma and Dr. Fuller reiterated that surgery would be necessary.  Plaintiff alleges that he then
19 saw Dr. Bal who was unaware of the recommendation for surgery.  Dr. Bal then contacted
20 defendant Dunn, who informed him that they were under the impression that the surgery had
21 already been performed.  After further discussion, defendants Dunn and Bal agreed and
22 understood that surgery needed to be arranged.  After several additional weeks of waiting for
23 surgery, plaintiff submitted another sick call slip and spoke with Nurse Bakewell who contacted
24 the referral staff and learned that no arrangements had been made for plaintiff's operation and
25 that Dr. Bal had not submitted the necessary request forms.  Nurse Bakewell then submitted an
26 urgent request form for plaintiff to receive his operation.

Plaintiff alleges that he finally underwent surgery on February 26, 2007. Plaintiff claims that U.C. Davis medical staff prescribed a strict pain medication regimen for him but that upon returning to the prison's general population, although he experienced severe pain and dizziness, he was told by defendant Hampton that defendant Winton refused to provide him with pain medication and said that he would receive it at the evening pill call. As the pain worsened, plaintiff alleges that his cellmate had to request defendant Hampton to notify medical staff of his condition but that Hampton refused to call medical staff. Plaintiff alleges that while in his cell he lost consciousness, fell to the floor and was rushed to the clinic where he finally received pain medication. Plaintiff alleges in general that in a series of specific instances after he was rushed to the clinic he was denied adequate pain medication by defendants Winton, Dr. Bal, Forshay, Spinks, and Wedell.

Plaintiff contends that his medical condition constitutes a serious medical condition that has resulted in permanent nerve damage and disfigurement and severe pain and suffering. Plaintiff also contends that his condition has significantly affected his daily activities in prison. Plaintiff argues that defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and section 1983. Plaintiff requests special damages, general damages, punitive damages, costs of the suit, and any further relief as the court may deem just and proper.

The court finds that plaintiff's amended complaint states a cognizable claim for relief under the Eighth Amendment against defendants Bal, Borges, Dunn, Forshay, Hampton, Kelly, Wedell, and Winton. If the allegations of the complaint are proven against the defendants, plaintiff has a reasonable opportunity to prevail on the merits of this action.

The court also finds that plaintiff's amended complaint does not state a cognizable claim for relief against defendants Brimhall, Jennings, Mandeville, Nicholson, and Spinks. More precisely, plaintiff has failed to include in his complaint and specific factual allegations against defendants Brimhall and Jennings. Although plaintiff has broadly alleged that these defendants

were deliberately indifferent to his medical needs, he has failed to allege with any degree of particularity overt acts which these defendants engaged in supporting his claims. In addition, although plaintiff's allegations against defendants Mandeville, Nicholson, and Spinks are more specific, they fail to state a cognizable constitutional claim for inadequate medical care against these defendants. Before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Lab., 622 F.2d 458, 460 (9th Cir.1980) (citing Estelle, 429 U.S. at 105-06).

        Accordingly, IT IS HEREBY ORDERED that:

    1. Plaintiff's application to proceed in forma pauperis is granted.

    2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. The fee shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

    3. Service of the complaint is appropriate for the following defendants: Bal, Borges, Dunn, Forshay, Hampton, Kelly, Wedell, and Winton.

    4. The Clerk of the Court shall send plaintiff eight USM-285 forms, one summons, an instruction sheet and a copy of the amended complaint filed December 7, 2007.

    5. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit all of the following documents to the court at the same time:

        a. The completed, signed Notice of Submission of Documents;

        b. One completed summons;

        c. One completed USM-285 form for each defendant listed in number 3 above; and

        d. Nine copies of the amended complaint filed December 7, 2007.

/////

6. Plaintiff shall not attempt to effect service of the complaint on defendants or request a waiver of service of summons from any defendant. Upon receipt of the above-described documents, the court will direct the United States Marshal to serve the above-named defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

7. Plaintiff's December 7, 2007 motion for leave to amend his complaint is granted.

DATED: March 5, 2008.

*/s/ Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
kilg2485.1a

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IVAN KILGORE,

      Plaintiff,                    No. CIV S-07-2485 GEB DAD

    vs.

RICHARD MANDEVILLE, et al.,      NOTICE OF SUBMISSION

      Defendants.               OF DOCUMENTS

_____/

      Plaintiff hereby submits the following documents in compliance with the court's order filed _____:

      _____ <u>one</u> completed summons form;

      _____ <u>eight</u> completed USM-285 forms; and

      _____ <u>nine</u> true and exact copies of the amended complaint filed December 7, 2007.

DATED: _____.

                                                _____
                                               Plaintiff