1
2
3
4
5
6
7
8       IN THE UNITED STATES DISTRICT COURT

9       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   IVAN KILGORE,

11           Plaintiff,                    No. 2:07-cv-2485 GEB KJN P

12       vs.

13   RICHARD MANDEVILLE, et al.,

14           Defendant.                    ORDER

15   _____/

16           Plaintiff is a state prisoner proceeding without counsel on his amended complaint

17   filed December 7, 2007, pursuant to 42 U.S.C. § 1983.  (Dkt. No. 5.)  Plaintiff alleges that

18   defendants at California State Prison-Sacramento ("CSP-S") were deliberately indifferent to his

19   medical needs in violation of the Eighth Amendment to the U.S. Constitution.  Presently pending

20   are plaintiff's motions for discovery (Dkt. Nos. 49, 65, 72), plaintiff's request for appointment of

21   counsel and for extended time to respond to defendant's motion for summary judgment (Dkt. No.

22   70), and defendant's motion for summary judgment (Dkt. No. 63).

23           For the following reasons, the court orders additional discovery, extends the

24   deadlines for completing discovery and filing dispositive motions, and vacates defendants'

25   motion for summary judgment without prejudice to refiling after close of the extended discovery

26   deadline.

I.  BACKGROUND

        Pursuant to an order filed March 6, 2008, the magistrate judge previously assigned

this case[1] found service of the amended complaint appropriate for defendants Dr. Jasdeep Bal,

Dr. Gabriel Borges, Registered Nurse Nancy Dunne, Vocational Nurse Gloria Forshay,

Correctional Officer Gregory Hampton, Chief Medical Officer Karen Kelly, Dr. James R.

Wedell, and Vocational Nurse Marcus Winton.  (Dkt. No. 7.)   The court summarized the factual

allegations of the amended complaint as follows (id. at 4-5):

> [P]laintiff alleges that prior to December 2005, he started experiencing breathing
> complications due to a sinus infection.  Plaintiff further alleges that defendant Dr.
> Wedell prescribed him ineffective medication on three occasions.  Plaintiff alleges
> that he complained to the registered nurse about the medication, and several
> weeks later, defendant Dr. Borges prescribed a different medication without
> seeing plaintiff.  Plaintiff contends that he subsequently submitted a sick call slip
> and, upon examination, Dr. Borges concluded that his sinus complications were
> the result of abnormal tissue growth.  He advised plaintiff to continue taking the
> medication and to return in a month for a follow-up visit.
>
> Plaintiff alleges that his breathing complications worsened thereafter.  He alleges
> that Dr. Borges told him surgery was necessary but that such arrangements would
> have to be made with U.C. Davis and that he was first required by the health care
> manager to pursue alternate treatments.  Plaintiff claims he later learned that Dr.
> Borges submitted merely a "routine" health care services request form for an
> outpatient diagnostic procedure when he should have submitted an "urgent"
> request because plaintiff had been suffering from frequent headaches and sinus
> pain for five months by that time.  Plaintiff also contends that Dr. Borges
> continued to experiment with less efficacious courses of treatment while the
> abnormal tissue continued to grow at an aggressive rate.  Plaintiff alleges that he
> received prednisone to control the inflammation, but experienced an allergic
> reaction to that medication.  Plaintiff alleges that he repeatedly asked Dr. Borges
> to submit an urgent referral, but his requests were denied.
>
> Plaintiff notes that Dr. Kelly, the Chief Medical Officer/Health Care Manager,
> was responsible for approving and delegating the arrangements for the outpatient
> services.  In addition, plaintiff notes that Dr. Kelly was responsible for ensuring
> that Dr. Borges provided him with proper medical care.
>
> Plaintiff alleges that, after waiting almost nine months for treatment, he
> resubmitted a sick call slip because the tissue mass was blocking his air passage
> and had extended out of his right nostril.  In addition, plaintiff alleges that he was
> experiencing dizziness, migraines, and breathing and sleeping complications.

---

[1]  This action is referred to a United States Magistrate Judge pursuant to 28 U.S.C.
§ 636(b)(1)(B), Local General Order No. 262, and E.D. Cal. L.R. ("Local Rule") 302.

Plaintiff saw Dr. Duc, who informed him that the reason he had not been seen by a specialist was because Dr. Borges submitted only a "routine" request for medical treatment.  Plaintiff alleges that Dr. Duc contacted the speciality referral director, defendant Dunn, and she confirmed that no arrangements had been made for a consultation with a specialist.  Dr. Duc then upgraded the original request to an "urgent" request for treatment and submitted additional forms that Dr. Borges had not.

Plaintiff alleges that he informed defendant Mandeville of his condition, told him that he had not yet seen a specialist and complained about the tedious process for obtaining treatment.  Defendant Mandeville told him to contact defendant Kelly with an "inmate request for interview" form.  Plaintiff alleges that he submitted the form but never heard from defendant Kelly.  Defendant Mandeville then instructed him to submit an "inmate request for an interview" form with Rick Hill, and plaintiff did so.

Finally, after a year of waiting, plaintiff was taken to see Dr. Vishal at the outpatient speciality clinic at U.C. Davis who informed plaintiff that there were a number of conditions that could account for the tissue mass and that he would need a CT scan and a biopsy.  Plaintiff alleges that the approval process for those diagnostic tests caused another two-month delay in his treatment.  Plaintiff alleges that next defendant Dr. Bal took over his treatment at CSP Sacramento and informed him that he would do all that he could to help plaintiff.  However, plaintiff alleges that there were still delays in obtaining his CT scan and that during the delay he continued to experience physical and mental anguish.

Plaintiff alleges that the CT scan revealed that invasive surgery was necessary to remove the tumor and it would leave him permanently disfigured.  Plaintiff alleges that it was explained by doctors that a less invasive procedure could have been performed, requiring only a small incision, if there were not delays in his medical treatment.

On November 29, 2006, plaintiff underwent a biopsy and was prescribed Vicodin to help manage his pain but suffered an allergic reaction to the medication resulting in plaintiff being rushed to the clinic for a Benadryl injection.  Plaintiff asserts that he requested Nurse Nicholson to ask the doctor for a different pain medication after the Vicodin was discontinued, but he refused and told plaintiff he would have to wait until the following day to see the doctor.  Plaintiff alleges that he had to wait in agony for twenty-four hours until he saw Dr. Bal, who prescribed a new pain medication only to learn that the pharmacy did not have the new in stock and another twenty-four hour delay until he was finally provided an alternative pain medication.

Plaintiff alleges that the results of the biopsy revealed that he had an inverted papilloma and Dr. Fuller reiterated that surgery would be necessary.  Plaintiff alleges that he then saw Dr. Bal who was unaware of the recommendation for surgery.  Dr. Bal then contacted defendant Dunn, who informed him that they were under the impression that the surgery had already been performed.  After further discussion, defendants Dunn and Bal agreed and understood that surgery needed to be arranged.  After several additional weeks of waiting for surgery, plaintiff submitted another sick call slip and spoke with Nurse Bakewell who

contacted the referral staff and learned that no arrangements had been made for plaintiff's operation and that Dr. Bal had not submitted the necessary request forms.  Nurse Bakewell then submitted an urgent request form for plaintiff to receive his operation.

Plaintiff alleges that he finally underwent surgery on February 26, 2007.  Plaintiff claims that U.C. Davis medical staff prescribed a strict pain medication regimen for him but that upon returning to the prison's general population, although he experienced severe pain and dizziness, he was told by defendant Hampton that defendant Winton refused to provide him with pain medication and said that he would receive it at the evening pill call.  As the pain worsened, plaintiff alleges that his cellmate had to request defendant Hampton to notify medical staff of his condition but that Hampton refused to call medical staff.  Plaintiff alleges that while in his cell he lost consciousness, fell to the floor and was rushed to the clinic where he finally received pain medication.  Plaintiff alleges in general that in a series of specific instances after he was rushed to the clinic he was denied adequate pain medication by defendants Winton, Dr. Bal, Forshay, Spinks, and Wedell.

Plaintiff contends that his medical condition constitutes a serious medical condition that has resulted in permanent nerve damage and disfigurement and severe pain and suffering.  Plaintiff also contends that his condition has significantly affected his daily activities in prison.  Plaintiff argues that defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and section 1983.  Plaintiff requests special damages, general damages, punitive damages, costs of the suit, and any further relief as the court may deem just and proper.

This action was assigned to the undersigned magistrate judge on February 9, 2010.  On March 2, 2010, this court vacated pretrial and trial dates pending review of the instant motions.  (Dkt. No. 68.)

Plaintiff has since informed the court that his sinus lesion has recurred, as discovered on examination in October 2009 and confirmed by CT scan in January 2010, and that his doctors have determined that further surgery will soon be necessary.  (Dkt. No. 70.)

## II.  PLAINTIFF'S DISCOVERY MOTIONS

Pursuant to motion filed August 25, 2009 (Dkt. No. 49), plaintiff seeks to compel the following categories of discovery from defendants:  (1) additional documents responsive to plaintiff's Requests for Production of Documents, First and Second Sets; (2) supplemental responses to plaintiff's First Set of Interrogatories; and (3) responses to plaintiff's Second Set of

////

4

1    Interrogatories. [2]  Defendants filed an untimely opposition (Dkt. No. 57),[3] which the court

2    accepted *nunc pro tunc* (see Dkt. No. 68, at 2, n. 2).  The court addresses each matter in turn.

3        **A.  Plaintiff's Request for Production of Documents, Set One**

4            Plaintiff served his first production request on defendants on July 31, 2008;

5    defendants responded on September 17, 2008.  For the following reasons, the court orders further

6    limited production of documents.

7            **1.  Request No. 2**: "California Department of Corrections and Rehabilitation

8    (CDCR) Inmate Medical Services Program Policies and Procedures (IMSPP) Mandate/Manual."

9    (Dkt. No. 49-2, at 10.)

10            Defendants' Response: "Defendant objects to this request on the grounds that it is

11   overly broad, overly burdensome, and not reasonably calculated to lead to the discovery of

12   admissible evidence.  Without waiving these objections, copies of these documents are

13   maintained in the prison library, and are available for inspection and copying pursuant to

14   institutional policies and procedures."  (Id.)

15            Contentions:  The parties agree that department policy authorizes plaintiff to make

16   copies of this manual at his own expense, citing CDCR's Department Operations Manual

17   ("DOM"), §§ 14010.21, 14010.21.3.  Defendants argue that the manual consists of "a two-

18   volume set comprising hundreds of pages," that plaintiff has failed to identify the sections he

19

20        [2] Plaintiff's discovery motion (Dkt. No. 49) is 731 pages in length, with exhibits
     throughout.  The motion was divided into several subparts for inclusion in the court's electronic
21   database, i.e., Dkt. Nos. 49 through 49-7, with pagination beginning anew for each subpart.  Page
     references herein conform to the electronic docket, not to the pagination originally provided by
22   plaintiff.
            Plaintiff previously sought to compel discovery pursuant to motion filed January 22,
23   2009; the motion was denied without prejudice to plaintiff filing a subsequent motion providing
     greater specificity.  (Dkt. Nos. 34, 37.)
24
        [3] Although the defendants have appeared in this action pursuant to two separate Answers
25   (Dkt. Nos. 15, 25), they are represented by the same counsel with the California Attorney
     General's Office.  The instant discovery disputes involve defendants Dunne, Hampton, Kelly,
26   Borges, Forshay and Bal.  (See Dkt. No. 57, at 1.)

needs, and that to require defendants to "copy all of the medical policies" "would entail countless hours of staff time" that would produce documents with no more than "remote relevance" to "mere allegations."  (Dkt. No. 57, at 2-4.)  Plaintiff seeks an order of this court directing defendants or the CSP-SAC litigation coordinator to provide plaintiff with his own copy. Plaintiff argues that the question whether his medical care complied with institutional rules, regulations and policies is at the heart of this litigation.

Order and Rationale:  Denied.  While some of the information contained in the manual is clearly relevant in establishing defendants' duty of care, as demonstrated by defendants' reliance on portions of the manual in their motion for summary judgment (Dkt. No. 63, Undisputed Fact No. 23, and Exh. E), the information is available to plaintiff for his review and copying pursuant to established institutional procedures.

**Request No. 3:** "The CDCR 7252 Form (Request for Authorization of Temporary Removal for Medical Treatment), related to plaintiff's February 26, 2007 lateral rhinotomy surgery."  (Dkt. No. 49, at 11.)

Defendants' Response: "Copies of this document are maintained in Plaintiff's medical file, which is available for inspection and copying pursuant to institutional policies and procedures."  (Id.)

Contentions:  Plaintiff contends that this document was not in his medical file and asserts that it should be otherwise available to defendants for production to plaintiff.  Defendants do not directly address this request in their opposition to plaintiff's discovery motion, asserting generally that they are unable to produce documents missing from plaintiff's medical file, which is "all that defendants have in their possession, custody and control."  (Dkt. No. 57, at 3.)

Order and Rationale: Granted in part.  Defendants shall, within 14 days of service of this order, conduct an appropriate search for this document, serve a supplemental response to this request reflecting such search and, if available, shall produce a copy of the subject CDCR 7252 Form.

1    This request seeks clearly relevant information concerning the timing of plaintiff's

2  treatment.  Review of plaintiff's argument, which sets forth the purpose and procedures for

3  utilizing a CDCR Form 7252, indicates that the completed form could have been filed in a place

4  other than plaintiff's medical file.  Defendants should undertake the appropriate inquiry and

5  search.

6    **Request No. 8**:  "According to CDCR IMSPPP, Chapter 8, Sec. III D(3), the

7  Speciality Clinic staff person shall maintain a log/record indicating the date(s) Specialty services

8  where (sic) requested and the date(s) of speciality service [that] actually takes place.  Plaintiff

9  requests a computer print-out copy of said log/record of all speciality clinic request(s), etc. for the

10  UC Davis ENT Clinic dating from April of 2006 to present time."  (Dkt. No. 49-2, at 12.)

11    Defendants' Response:  "Defendants object to this request on the grounds that it is

12  overly broad, burdensome, and not reasonably calculated to the discovery of admissible evidence.

13  Defendants further object to this request on the grounds that any such log would contain the

14  names and medical information of other inmates, which is privileged under state law."  (Id. at 12-

15  13.)

16    Subsequent Communications:  Plaintiff responded by letter that he sought this

17  information only with respect to his own specialty appointments from September 22, 2008 to

18  present.  Plaintiff was informed by a CDCR official that the relevant program was "read only,"

19  that a printout could not be provided, that plaintiff could "ask for an 'OLSON' review and get

20  copies of your medical records."  Plaintiff responded that prior OLSON reviews of his medical

21  files demonstrated that this information was not included, and again sought the information

22  directly.  The same CDCR official responded that the "information contained in computer

23  tracking programs is not part of the medical record and therefor not available to you in any form

24  – including handwritten."  (Id. at 13; Exhs. 5-7.)

25    Contentions:  Defendants do not directly address this request in their opposition,

26  apparently relying on their general statement that they produced a copy of plaintiff's medical file.

7

(Dkt. No. 57, at 3.)

Order and Rationale: Denied; no further production required.  Defendants and CDCR staff have adequately responded that the requested information, as subsequently narrowed by plaintiff, is not kept in the ordinary course of business, at least in document form, and therefore cannot reasonably be produced.

**Request No. 10:**  "According to the CDCR IMSPPP, Chapter 11, Sec. III, 'General Administration Procedures,' licensed healthcare staff administering medication shall record the medication administered on the inmate/patient's MAR [Medical Administration Record].  Plaintiff requests the MAR documents for the following dates as related to his medication management:  [specified dates in 2006 and 2007]."  (Dkt. No. 49-2, at 14-15.)

Defendants' Response:  "Defendants object to this request on the grounds that it is compound, and requests a document that does not exist.  Defendants are under no obligation to create a document providing the names of medical staff who administer medications.  Without waiving these objections, and with regard to MAR documents, such documents, if they exist, are contained in Plaintiff's medical file."  (Id. at 15.)

Contentions:  Plaintiff insists that such documents exist independent of his medical file, as demonstrated by the fact that he was provided, from the litigation coordinator pursuant to a Public Records Request, his MAR documents for the dates March 6-18, 2007; plaintiff further asserts that this information  was "fraudulent" because it contained the incorrect notation that "inmate refused medication."  Plaintiff states that he filed a Form 602 challenging the authenticity of the information, which was granted in part – the appeal found that the challenged notation "was an error since you were in the hospital," and "should have been entered as 'out to the hospital.'"  Plaintiff contends that this process demonstrates the existence of the requested documents and that the information is "material to allegations in the complaint that the defendants Bal, Winton and Forshay either refused or failed to provide Plaintiff pain medications and cleaning supplies for the ailment to which he was suffering." (Dkt. No. 49-2, at 14-16,

8

1    Exhs.5, 9-10.)

2          Defendants do not respond to plaintiff's contentions, apparently again relying on

3    their general assertion that they have no responsive documents in their custody or control other

4    than those contained in plaintiff's medical file.

5          Order and Rationale:  Granted in part.  Defendants shall, within 14 days of service

6    of this order, conduct an appropriate search for these documents, serve a supplemental response

7    to this request reflecting such search and, if available, shall produce the requested MARs for the

8    specified dates.

9          The requested information is relevant for the reasons stated by plaintiff.  That

10   some of the requested information was provided by the litigation coordinator indicates that such

11   documents are apparently maintained by defendants in the regular course of providing medical

12   care.  Defendants' failure presently to address this matter underscores the necessity of requiring

13   a supplemental response.

14         **Request No. 13**:  "Please provide a detailed description of the responsibilities,

15   functions, and/or otherwise for the following job descriptions at CSP-Sacramento:  (A) Chief

16   Medical Officer/Health Care Manager, (B) Utilization Manager/Specialty Clinic Referral

17   Manager, (C) Consult (sic) Claudia Baughman, OT."  (Dkt. No. 49-2, at 17.)

18         Defendants' Response:  "Defendant objects to this request on the grounds that it is

19   vague and ambiguous as to time, presumes as true things that are not true, and appears to seek the

20   job description of 'Consult Claudia Baughman, OT.'  There is no such job within CSP-

21   Sacramento.  Without waiving these objections, there is no position of Health Care Manager.

22   Defendants are producing the duty statements for Chief Medical Officer, Registered Nurse, CF

23   (Utilization Management) and Office Technician, which are appended as Attachment 1."  (Id.)

24         Contentions:  Plaintiff insists that duty statements for the position "Health Care

25   Manager" should exist.  Defendants maintain that there is no such position and that they have

26   produced all relevant documents.  (Dkt. No. 57, at 3.)

1    <u>Order and Rationale</u>:  Denied; no further production required for the reasons

2    stated by defendants.

3    **B.  <u>Plaintiff's Request for Production of Documents, Second Set, Request No. 1</u>**

4    Plaintiff served his second production request on November 2, 2008; defendants

5    responded on December 16, 2008.  Only the response to Request No. 1 is challenged.

6    Pursuant to Request No. 1, plaintiff sought the "[c]urriculum vita[e] for all

7    defendants, including, but not limited to, any subsequent training the defendants have received

8    related to medical procedures, policies, etc. in connection to their current (sic) or as related."

9    Defendants objected on grounds of vagueness "as to which defendants plaintiff is referring," that

10   the documents do not exist, and that the documents are not reasonably calculated to lead to the

11   discovery of relevant evidence.  Plaintiff now contends as follows (Dkt. No. 49-2, at 18-19):

12   The requested production is material to the allegations and requirements to prevail
      on the claim of deliberate indifference whereas none of the medical doctors listed
13   as defendants are certified specialists in the field of otolaryngology. . . . [The
      request] is admissible evidence to either support or discredit and (sic) medical
14   opinions, diagnosis, and treatment the defendants either provided or did not
      provide that a specialist would during the course of the Plaintiff's suffering.

15

16   Plaintiff is correct that the education, training and specialities, or not, of the

17   medical defendants is relevant to this action.  The curriculum vitae of expert witnesses are

18   routinely required.  <u>See</u> Fed. R. Civ. P. 26(a)(2)(B)(iv) (disclosure of expert testimony includes

19   "the witness's qualifications").  Similarly, due to the professional expertise of medical

20   defendants, their curriculum vitae are generally assumed to be relevant.  <u>See</u>, <u>e.g.</u>, <u>Gatlin v.</u>

21   <u>Nichols</u>, 2009 WL 3233905, 2 (E.D. Cal. 2009) (curriculum vitae of medical defendant assumed

22   relevant); <u>Holton v. Jess</u>, 2009 WL 666946, 2 (E.D. Wis. 2009) (same); <u>cf.</u>, <u>Lindell v. Schneiter</u>,

23   2007 WL 5517463, 4 (W.D. Wis. 2007) (defendants' curricula vitae and personnel records

24   relevant to narrow issue).  Defendants' inherently inconsistent response to this request – both that

25   the requested documents do not exist and that such documents are not reasonably calculated to

26   lead to the discovery of admissible evidence – is evasive.

1    Consistent with the cases noted above, the court construes this request to require

2    the disclosure, by each named defendant, of his or her curriculum vitae, including medical

3    education, training and employment, redacted for current personal information.

4    Order:  Plaintiff's motion as to this request is granted.  Defendants shall, within

5    14 days, serve a supplemental response to this request and produce all responsive documents.

6    **C.  Plaintiff's Requests for Admissions**

7    Plaintiff seeks "an order either determining the sufficiency of the responses, to

8    compel proper response, or to have the matters ordered admitted," as to his requests for

9    admissions propounded in July and August 2008 upon five of the defendants pursuant to Fed. R.

10   Civ. P. 36.  (Dkt. No. 49-2, at 20.)  For the following reasons, the court grants this motion in part

11   as to defendants Kelly and Bal.

12   "The purpose of Rule 36(a) is to expedite trial by establishing certain material

13   facts as true and thus narrowing the range of issues for trial."  Asea, Inc. v. Southern Pac. Transp.

14   Co., 669 F.2d 1242, 1245 (9th Cir. 1981) (citations omitted).  Failure to timely respond to a

15   request is deemed an admission.  Fed. R. Civ. P. 36(a)(3).  A party may not assert lack of

16   knowledge or information as the basis for failing to admit or deny a request unless "the party

17   states that it has made reasonable inquiry and that the information it knows or can readily obtain

18   is insufficient . . ." Fed. R. Civ. P. 36(a)(4).  "A denial must fairly respond to the substance of the

19   matter; and when good faith requires that a party qualify an answer or deny only a part of a

20   matter, the answer must specify the part admitted and qualify or deny the rest."  Id.  "A matter

21   admitted under this rule is conclusively established unless the court, on motion, permits the

22   admission to be withdrawn or amended."  Fed. R. Civ. P. 36(b).  Significantly:

23   The requesting party may move to determine the sufficiency of an answer
     or objection.  Unless the court finds an objection justified, it must order
24   that an answer be served.  On finding that an answer does not comply with
     this rule, the court may order either that the matter is admitted or that an
25   amended answer be served.  The court may defer its final decision until a
     pretrial conference or a specified time before trial.

26

1  Fed. R. Civ. P. 36(a)(6).

2      **1.  Defendant Dr. Gabriel Borges**

3          Plaintiff challenges the responses of defendant Borges to plaintiff's Requests for

4  Admissions Nos. 3- 5, 7, 11, 13, 15-17, 19-23.  (Dkt. No. 49-2, at 20-41).  Defendant generally

5  opposes the motion on the ground that he admitted or denied those requests that were properly

6  drafted and based upon information that he knew or that was readily obtainable, but did not

7  respond to inquiries framed as questions rather than statements of fact, or were compound, asked

8  for legal conclusions based on controverted facts, or to verify the authenticity of documents that

9  were not in his possession, custody or control (noting that Borges works at Folsom State Prison

10  and could not practicably authenticate documents within the medical file of plaintiff, who is

11  housed at CSP-S).  Notwithstanding these objections, defendant provided substantive responses

12  to portions of several of the disputed requests.

13          The court has reviewed each of the disputed requests, the answers and objections

14  thereto, and plaintiff's instant arguments, and finds that defendant Borges' response to each

15  request was adequate.

16          Order:  Plaintiff's motion as to defendant Borges is denied.

17      **2.  Defendant Chief Medical Officer Karen Kelly**

18          Plaintiff challenges the responses of defendant Kelly to plaintiff's Requests for

19  Admissions Nos. 2-19.  (Dkt. No. 49-2, at 41-56).  Defendant's general opposition is similar to

20  that interposed by defendant Borges.

21          The court has reviewed each of the disputed requests, the answers and objections

22  thereto, and the parties' current arguments, and finds that defendant Kelly's response to each

23  request was adequate with the exception of Request No. 3.  To the extent the documents

24  identified therein are part of plaintiff's medical file, they should be readily obtainable by

25  defendant Kelly for purposes of authentication; Kelly did not contend otherwise.

26          Order:  Plaintiff's motion as to defendant Kelly is granted in part.  Kelly shall,

1   within 14 days of service of this order, serve an amended answer to plaintiff's Request No. 3.

2   **3.  Defendant Registered Nurse Nancy Dunne**

3   Plaintiff challenges the responses of defendant Dunne to plaintiff's Requests for

4   Admissions Nos. 2-16, 18-19.  (Dkt. No. 49-2, at 57-72).  Defendant's general opposition

5   parallels that of the other defendants, as well as challenging plaintiff's attempt, through his

6   requests, to obtain agreement with his construction or interpretation of specified documents and

7   events, rather than simply seeking authentication of a document or making a plain statement of

8   facts.

9   Indeed, the court's review of the requests demonstrates that most were framed to

10  reflect plaintiff's legal arguments and conclusions.  The court finds that defendant Dunne

11  provided adequate responses to each contested.

12  Order:  Plaintiff's motion as to defendant Dunne is denied.

13  **4.  Defendant Dr. Jasdeep Bal**

14  Plaintiff challenges the responses of defendant Bal to plaintiff's Requests for

15  Admissions Nos. 2-7, 9-10, 12, 13-18.  (Dkt. No. 49-2, at 72-82.)  Like the other defendants,

16  defendant Bal generally opposes this motion for the foregoing reasons, as well as emphasizing

17  the compound nature of many of the requests (relying on the requirement of Fed. R. Civ. P.

18  36(a)(2) that "[e]ach matter must be separately stated").

19  The court's review demonstrates inadequacy only in defendant Bal's response to

20  Request No. 2, which seeks defendant's official positions during the relevant period.

21  Defendant's partial answer, limited to the current time, is incomplete.  See Fed. R. Civ. P.

22  36(a)(4) (requiring a "fair response" made in "good faith").

23  Order:  Plaintiff's motion as to defendant Bal is granted in part.  Bal shall, within

24  14 days of service of this order, serve an amended answer to plaintiff's Request No. 2,

25  responding to the entire relevant period, December 2005 through March 2007.

26

1          **5.  Defendant Correctional Officer Gregory Hampton**

2          Plaintiff challenges the responses of defendant Hampton to plaintiff's Requests

3    for Admissions Nos. 4 and 8.  (Dkt. No. 49-2, at 82-83.)  Both requests seek information about

4    Hampton's responses to plaintiff's complaints of pain on March 6, 2007.  Plaintiff asserts that

5    defendant Hampton's responses are inherently inconsistent.  However, the requests address

6    different matters and therefore court finds that the responses are not inconsistent.

7          Order:  Plaintiff's motion as to defendant Hampton is denied.

8          **D.  Plaintiff's Interrogatories, Set One**

9          **1.  Verification**

10          Defendants concede that, although they represented that their October 17, 2008

11   answers to plaintiff's interrogatories were verified and that their signatures would be

12   forthcoming,[4] they had not yet – as of December 31, 2009 – provided such signatures.

13   Defendants state that they "therefore, must get new signatures, and forward the signed copies to

14   the Plaintiff."  (Opposition, Dkt. No. 57, at 8.)  Plaintiff contends that defendants should be

15   penalized by an order of this court deeming waived any objections defendants have interposed in

16   response to the interrogatories.  (Dkt. No. 49-2, at 84.)

17          A party served with interrogatories pursuant to Fed. R. Civ. P. 33 is obliged to

18   serve answers or objections; answers must be made under oath and signed by the party, while

19   objections must be signed by the party's attorney.  Fed. R. Civ. P. 33(b)(3), (4).  These

20   obligations must be satisfied within 30 days unless that time is modified by the court or in

21   writing by the parties.  Fed. R. Civ. P. 33(b)(2).  Here, defendants obtained two extensions of

22   time within which to complete and serve their answers to plaintiff's interrogatories (Dkt. Nos.

23   28, 30), which they then timely served.  The court finds that defendants have substantially

24

25          [4]  The signature line of each set of answers provides, "These responses have been verified
     telephonically, and the signed verifications will be forwarded when received."  (Dkt. No. 57,
26   Exh. I.)

complied with the verification requirement, based on their initial representation of "telephonic verification," the fact that they do not now seek to amend or qualify their answers, and their present representation that they will now provide the appropriate signatures (if they have not already done so).  The court also finds that plaintiff has not been prejudiced by this delay.

   Order:  Plaintiff's motion is granted in part.  Defendants shall, within 14 days of service of this order, serve upon plaintiff separately signed verifications attesting to the authenticity of each defendant's answers to plaintiff's first set of interrogatories.  Plaintiff's motion for sanctions is denied.

   **2.  Content**

   Plaintiff contends that defendants improperly responded to his first set of interrogatories by generally referring him to his medical file or interposing improper objections rather than providing specific answers.  Plaintiff devotes fifty pages of his motion to these matters.  Defendants, in contrast, devote less than one page in responding generally (and equivocally) that "[w]ith respect to most, if not all, of the responses, the answers are complete and non-evasive," and that defendants provided "apparent complete answers."  Dkt. No. 57, at 8. Defendants contend that many of plaintiff's interrogatories were disguised requests for production or sought information based on documents that "were not what Plaintiff claimed them to be."  Id.

   The court has reviewed each of the disputed interrogatories, and the answers and objections thereto, with due consideration to plaintiff's specific arguments and defendants' general position.  Plaintiff is informed that many of his interrogatories are argumentative, assume disputed facts for which legal conclusions are sought, are vague or ambiguous, compound (containing numerous statements and questions that cannot, contrary to plaintiff's assertion, be construed as discrete subparts), and/or overly broad or burdensome, and occasionally irrelevant. For the following reasons, the court grants this motion in part as to defendants Borges, Dunne, Kelly and Bal.

### 1.  Defendant Dr. Gabriel Borges

Plaintiff challenges defendant Borges' answers and objections in response to Interrogatory Nos. 1, 2, 4, 5, 8-12.

Most of the interrogatories were adequately answered or objections properly interposed.  The exception is Interrogatory No. 12.  The interrogatory is directly relevant to the issues in dispute (training and knowledge in the field of otolaryngological tumors), and a straightforward answer should be provided.

Order:  Plaintiff's motion as to defendant Borges is granted in part.  Borges shall, within 14 days of service of this order, provide an amended answer to Interrogatory No. 12.

### 2.  Defendant Registered Nurse Nancy Dunne

Plaintiff challenges defendant Borges' answers and objections in response to Interrogatory Nos. 1-6, 8.

In general, the interrogatories were adequately answered or objections properly made.  The exception is Interrogatory No. 8, which seeks defendant's training and knowledge in the field of otolaryngological tumors.

Order:  Plaintiff's motion as to defendant Dunne is granted in part.  Dunne shall, within 14 days of service of this order, provide an amended answer to Interrogatory No. 8.

### 3.  Defendant Chief Medical Officer Karen Kelly

Plaintiff challenges defendant Kelly's answers and objections in response to Interrogatory Nos. 1, 2, 4-6, 9, 10, 15-18.

Interrogatories 15 through 18 seek the sequence of events and responsible parties in providing plaintiff's treatment for the period April 17, 2006 through December 2006.  In his complaint, plaintiff alleges that prior to December 2005 he was prescribed sinus medication that was ineffective, that he first reported breathing difficulties in December 2005, ultimately obtained surgical treatment on February 26, 2007, and then failed to obtain necessary post-surgical treatment through March 2007.  Plaintiff seeks the reasons and identity of persons

1 responsible for the delays in plaintiff obtaining appropriate treatment.

2       The court construes these interrogatories as seeking the chronology of plaintiff's

3 treatment and referrals, including the identity of personnel who provided such treatment or

4 referrals. Given the limitations of plaintiff's pro se and lay status, it is reasonable to request and

5 obtain this information in a distilled form. Defendant Kelly, CSP-S Chief Medical Officer from

6 February 2006 to February 2007, and now CSP-S Chief Psychologist, is the most appropriate

7 defendant to undertake this task. Plaintiff can then rely on his medical record for the details of

8 his treatment. It will be up to plaintiff to compare this information with relevant CDCR policies

9 and procedures. Although plaintiff seeks the reasons for any disparities, that is the substance of

10 this litigation.

11       The remaining interrogatories were adequately answered and objections properly

12 interposed.

13       <u>Order</u>: Plaintiff's motion as to defendant Kelly is granted in part. Kelly shall,

14 within 14 days of service of this order, serve one amended answer responsive to plaintiff's

15 Interrogatory Nos. 15-18 that succinctly and chronologically identifies, for the period April 17,

16 2006 through December 2006, plaintiff's medical treatment, the providers of each treatment, and

17 the completion and forwarding of any CDCR referral forms, including the identity of the

18 providers making the referrals and to whom, and the identity of the providers responsible for

19 responding to such referrals.

20       **4. Defendant Dr. Jasdeep Bal**

21       Plaintiff challenges defendant Bal's answers and objections in response to

22 Interrogatory Nos. 1-10. Bal's objections to Requests Nos. 1, 4, and 5 are properly asserted.

23 Bal's remaining objections and very limited answers demonstrate a lack of reasonable effort to

24 construe plaintiff's interrogatories in a manner to which Bal could specifically respond. It is

25 clear that plaintiff seeks information relative to his allegations that Bal, who was plaintiff's

26 primary physician for much of the relevant period, improperly contributed to delays in plaintiff

17

obtaining diagnostic testing, surgery and medications.  It is also clear, pursuant to the Federal

Rules, that defendant is required to provide full answers to interrogatories to the extent they are

not specifically objectionable.  See Fed. R. Civ. P. 33(b)(3), (4).  Moreover, "[a]n interrogatory

may relate to any matter that may be inquired into under Rule 26(b)," Fed. R. Civ. P. 33(a)(2),

and "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling,

abstracting, or summarizing a party's business records," the burden for doing so lies with the

party who is most "readily" able to locate and identify such records, Fed. R. Civ. P. 33(d)(1).

For the foregoing reasons, the court will require defendant Bal to provide

supplemental answers to the following interrogatories, as more narrowly construed by the court:

> Interrogatory No. 2:  For the period commencing December 2005 to the present, identify CDCR policy and/or protocol in responding to an "urgent" CDCR 7243 Form ("RFS"), including identification of the criteria for implementing further diagnostic procedures and/or referral to outside specialists, both in general and with specific reference to otolaryngological matters.

> Interrogatory Nos. 3, 6, 8, 9:  During the period of your care of plaintiff, identify the date(s) and substance of any CDCR 7243 Form or relevant 602 Form filed by plaintiff, and any referrals or recommendations by you and/or other medical providers that plaintiff receive further diagnostic testing or procedures relative to his otolaryngological complaints; provide the date(s) and substance of your response to any such referrals or recommendations, and/or the response of other  identified medical providers, including Speciality Referral Staff members.

> Interrogatory No. 7:  As currently framed, this interrogatory properly seeks information relative to defendant Bal's training and knowledge in the field of otolaryngological tumors.

> Interrogatory No. 10:  As currently framed, deleting reference to the exhibit to which defendant objected, this interrogatory properly asks defendant Bal to "Provide the full name of the Registered Nurse who logged the plaintiff's medications and discharge orders upon the March 6, 2007 return from the U.C. Davis Medical Center (hospital)."

Order:  Plaintiff's motion as to defendant Bal is granted in part.  Bal shall, within

14 days of service of this order, serve supplemental answers to plaintiff's Interrogatory Nos. 2, 3,

6-10, as construed herein by the court.

**5. Defendant Correctional Officer Gregory Hampton**

1    Plaintiff challenges defendant Hampton's answers and objections in response to

2  Interrogatory Nos. 1 and 3.  Hampton's objections to Requests Nos. 1 and 3 are valid.

3    Order:  Plaintiff's motion as to defendant Hampton is denied.

4    **E.  Plaintiff's Interrogatories, Set Two**

5    Plaintiff contends that he served a second set of interrogatories on defendants

6  Kelly, Ball and Dun in November 2008, which he re-served in February 2009 after being

7  informed by defense counsel that the interrogatories had not been received.  (Dkt. No. 49-3, at

8  36, Exhs. 40-42).  Plaintiff's proofs of service support his representations.  However, defense

9  counsel maintains that defendants were never served or re-served with plaintiff's second set of

10  interrogatories.  (Dkt. No. 57, at 8-9.)

11    Plaintiff seeks an order compelling defendants' responses, and seeks leave of

12  court to propound a total of thirty interrogatories (five in excess of the 25-interrogatory limit set

13  by Fed. R. Civ. P. 33(a)) on defendant Kelly.  Because additional discovery is required by this

14  order, the court will grant this motion as follows.

15    Order:  Within 14 days of service of this order, plaintiff shall serve his

16  Interrogatories, Set Two, upon each defendant; plaintiff may serve thirty interrogatories upon

17  defendant Kelly.  Defendants shall, within 30 days after being served these interrogatories, serve

18  upon plaintiff their answers and any proper objections thereto.

19    **F.  Plaintiff's Request for a Transcript of his Deposition Testimony**

20    Plaintiff alleges that defense counsel agreed at plaintiff's deposition to provide

21  plaintiff with a transcript of his deposition testimony.  However, the transcript was not

22  forthcoming and plaintiff's subsequent efforts to obtain a copy were unsuccessful.  Plaintiff seeks

23  an order of this court compelling defendants to provide plaintiff with such transcript, based on

24  the assertion that this right is accorded plaintiff pursuant to Fed. R. Civ. P. 30(e).  The motion is

25  made independently of plaintiff's formal discovery requests.  (Dkt. No. 49-2, at 19.)

26    Defendants assert that it is plaintiff's responsibility to obtain his own copy of the

1  transcript and that they should not be required to pay the court reporter the customary fee to

2  obtain a transcript on plaintiff's behalf.

3       Plaintiff's reliance on Fed. R. Civ. P. 30(e) is misplaced.  Rule 30(e) only entitles

4  plaintiff, upon request, to review and suggest changes to a deposition transcript within thirty days

5  after it becomes available.  Further, while plaintiff has been accorded in forma pauperis status in

6  this action, thus entitling plaintiff to pay the full filing fee over time, 28 U.S.C. § 1915(b), this

7  determination does not waive costs associated with this litigation, including the cost of plaintiff's

8  deposition transcript .  See, e.g., Tabron v. Grace, 6 F. 3d 147, 159 (3rd Cir. 1993), and cases

9  cited therein; accord, Tuvalu v. Woodford, 2006 WL 3201096 (E.D. Cal. 2006)

10      Order:  Plaintiff's motion for an order requiring defendants to provide plaintiff

11 with a transcript of his deposition testimony is denied.

12               **G.  Plaintiff's General Motion for Sanctions**

13      Plaintiff seeks monetary sanctions and issue preclusion sanctions based on the

14 alleged bad faith of defendants in responding to plaintiff's discovery requests.  It is the

15 undersigned's impression that defendants have generally attempted in good faith to respond to

16 plaintiff's extensive and sometimes confusing discovery requests.  Accordingly, the court finds

17 that an award of expenses would be unjust.  Fed. R. Civ. P. 37(a)(5)(A)(iii).  Additionally,

18 because defendants have not disobeyed a discovery order, the sanction of issue preclusion is

19 inappropriate.  Fed. R. Civ. P. 37(b)(2)(A).

20      Order:  Plaintiff's motion for sanctions is denied as to all defendants.

21 **III.  PLAINTIFF'S MOTION TO QUASH SUBPOENA**

22      Plaintiff moves to quash defendants' February 9, 2010 subpoena duces tecum

23 served upon third party Paul. J. Donald, M.D., who is one of plaintiff's treating physicians at the

24 U.C. Davis Department of Otolaryngology.  (Dkt. No. 65, 72.)   Plaintiff asserts that the

25 information is privileged because it contains confidential communications and Dr. Donald is not

26 a party to this action.  (Dkt. No. 65.)  Plaintiff also asserts that the subpoena seeks "various other

1  confidential medical records." (Dkt. No. 72.)  While the court does not have a copy of the

2  subpoena, plaintiff has included a February 25, 2010 letter from the U.C. Davis Medical Center

3  noting plaintiff's objections "to the release of your medical records." (Dkt. No. 72, at 2.)

4  Defendants have not responded to this motion.

5          A party has standing to seek to quash a subpoena served on a third party,

6  pursuant to Fed. R. Civ. P. 45(c)(3), based on a claim that the subpoena infringes upon the

7  movant's legitimate and privileged interests.  U.S. v. Tomison,  969 F. Supp. 587, 596 (E.D. Cal.

8  1997) (citations omitted); Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005).

9  A litigant's privacy interest in his confidential medical records is not absolute but conditional; a

10  limited impairment of the right may be properly justified.  Soto v. City of Concord, 162 F.R.D.

11  603, 618-619 (N.D. Cal. 1995).  The determination requires a balancing of plaintiff's privacy

12  rights against defendants' need for the information.  Id. (and cases cited therein).  "The test . . . is

13  not relevance – the records may be highly relevant – but the test is whether the privilege has been

14  waived by putting the privileged information 'at issue.'"  E.E.O.C. v. Serramonte, 237 F.R.D.

15  220, 224 (N.D. Cal. 2006).

16          Plaintiff contends that defendants were deliberately indifferent to his medical

17  needs associated with an inverted papilloma in his right nostril.  The extent and duration of the

18  growth were assessed, and the resulting surgery conducted, by U.C. Davis physicians associated

19  with the otolaryngology speciality clinic.  Thus, it appears that the heart of plaintiff's case, both

20  as to alleged liability and potential damages, will likely be found in plaintiff's U.C. Davis

21  medical records.  Such information should be equally available to defendants – it would be

22  improper to permit plaintiff to withhold relevant information or to introduce only selected

23  portions of these medical records absent demonstrated irrelevancy to the matters plaintiff has put

24  in issue by filing and pursing this litigation.  The undersigned finds that, based upon the record

25  before the court, there is no reasonable basis upon which plaintiff can withhold or selectively

26  disclose his U.C. Davis Medical Records.

1    <u>Order</u>:  The court denies plaintiff's motion to quash defendants' subpoena duces

2    tecum for plaintiff's medical records served upon third party U.C. Davis Medical Center and/or

3    Dr. Paul Donald.

4    **IV.  <u>PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL</u>**

5           Plaintiff again seeks appointment of counsel.  (Dkt. No. 70.)  Plaintiff's prior

6    request was denied.  (Dkt. Nos. 24, 35.)  Plaintiff asserts changed circumstances occasioned by

7    his need for additional surgery, and seeks in the alternative an extension of time within which to

8    respond to defendants' motion for summary judgment.  The court's present order accommodates

9    plaintiff's needs by requiring further discovery from defendants and, as set forth below, vacating

10   without prejudice defendants' motion for summary judgment.

11          Generally, "[i]n proceedings in forma pauperis, the district court 'may request an

12   attorney to represent any person unable to afford counsel.' 28 U.S.C. § 1915(e)(1).  The decision

13   to [obtain and] appoint such [voluntary] counsel is within 'the sound discretion of the trial court

14   and is granted only in exceptional circumstances. ' <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1236

15   (9th Cir. 1984).  A finding of the exceptional circumstances of the plaintiff seeking assistance

16   requires at least an evaluation of the likelihood of the plaintiff's success on the merits and an

17   evaluation of the petitioner's ability to articulate his claims 'in light of the complexity of the

18   legal issues involved.' <u>Wilborn v. Escalderon</u>, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting

19   <u>Weygandt v. Look</u>, 718 F.2d 952, 954 (9th Cir. 1983))." <u>Agyeman v. Corrections Corp. of</u>

20   <u>America</u>, 390 F.3d 1101, 1103 (9th Cir. 2004).  "Neither of these factors is dispositive and both

21   must be viewed together before reaching a decision on request of counsel under section 1915(d)."

22   <u>Wilborn</u>, <u>supra</u>, 789 F.2d at 1331 (fn. omitted); <u>see</u> <u>also</u>, <u>Terrell v. Brewer</u>, 935 F.2d 1015, 1017

23   (9th Cir. 1991).

24          While there may be a likelihood of success on the merits of plaintiff's claims if

25   proven, plaintiff has demonstrated a more than adequate ability to articulate and pursue his

26   factual and legal claims as set forth in his complaint and the instant discovery motions.  Thus, the

                                             22

1 court finds that appointment of counsel is not warranted.

2 **V.  SCHEDULING**

3        The discovery deadline is extended to September 10, 2010.  The deadline for

4 filing dispositive motions is extended to October 15, 2010.

5        Defendants' motion for summary judgment will be vacated without prejudice to

6 refiling after close of the extended discovery deadline and before the dispositive motion

7 deadline.[5]

8 **VI.  CONCLUSION**

9        For the foregoing reasons, IT IS HEREBY ORDERED that:

10        1.  Plaintiff's motion to compel discovery (Dkt. No. 49) is granted in part; the

11 parties shall comply with the substance and deadlines for further discovery as set forth in the

12 body of this order above;

13        2.  Plaintiff's motion to quash defendants' third party subpoena (Dkt. Nos. 65, 72)

14 is denied;

15        3.  The discovery deadline is extended to September 10, 2010;

16        4.  Plaintiff's motion for appointment of counsel (Dkt. No. 70) is denied;

17        5.  The deadline for filing dispositive motions is extended to October 15, 2010;

18        6.  Defendants' motion for summary judgment (Dkt. No. 63) is vacated without

19 prejudice; and

20 ////

21 ////

22 ////

23 ////

24 ////

25

26        [5]  The court notes that defendants' motion for summary judgment was untimely filed one day after the court's third extension of the dispositive deadline.  (Dkt. Nos. 61, 63.)

1           7.  Plaintiff's motions for extension of time within which to oppose defendants'

2    motion for summary judgment, and to vacate the prior scheduling order (Dkt. No. 70) are denied

3    as moot.

4           SO ORDERED.

5    DATED:  June 18, 2010

6

7

8

9    _____
     KENDALL J. NEWMAN
10   UNITED STATES MAGISTRATE JUDGE

11   kilg2485.mtns

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26